21-1379
*United States v. Barrett*

# In the
# United States Court of Appeals
# for the Second Circuit

_____

AUGUST TERM 2023

No. 21-1379

UNITED STATES OF AMERICA,
*Appellee*,

v.

DWAYNE BARRETT, AKA SEALED DEFENDANT 3, AKA TALL MAN,
*Defendant-Appellant*,

FAHD HUSSAIN, AKA SEALED DEFENDANT 1, AKA ALI, AKA MOE,
JERMAINE DORE, AKA SEALED DEFENDANT 2, AKA ST. KITTS, AKA
BLAQS, TAIJAY TODD, AKA SEALED DEFENDANT 4, AKA BIGGS,
TAMESHWAR SINGH, AKA SEALED DEFENDANT 5, AKA JERRY, SHEA
DOUGLAS, DAMIAN CUNNINGHAM, AKA SEALED DEFENDANT 1, AKA
JABA,
*Defendants*.

_____

On Appeal from the United States District Court
for the Southern District of New York

_____

ARGUED: SEPTEMBER 11, 2023

DECIDED: MAY 15, 2024

_____

Before: RAGGI, LOHIER, and CARNEY, *Circuit Judges*.

_____

On appeal of an amended judgment entered on remand in the United States District Court for the Southern District of New York (Sullivan, *J.*), defendant Dwayne Barrett argues that (1) his initial appellate counsel was constitutionally ineffective in failing to mount a sufficiency challenge to his conviction on one count of substantive Hobbs Act robbery, and related firearms and murder counts, on the ground that the evidence demonstrated only attempted robbery; (2) in any event, after *United States v. Taylor*, 596 U.S. 845 (2022), Hobbs Act robbery cannot be identified as a categorical crime of violence; (3) his 50-year prison sentence is procedurally unreasonable based on the district court's (a) erroneous application of U.S.S.G. § 2A1.1 in calculating his Sentencing Guidelines range, and (b) misapprehension that a consecutive sentence was mandated for 18 U.S.C. § 924(j) murder; and (4) such a lengthy sentence is substantively unreasonable. The court rejects all arguments except the consecutive sentence challenge, where we are obliged to identify error by the Supreme Court's recent decision in *Lora v. United States*, 599 U.S. 453 (2023).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

––––––––––––––––––––

MATTHEW B. LARSEN, Appeals Bureau, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

MICHAEL D. MAIMIN, Assistant United States Attorney (Hagan Scotten, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney

2

for the Southern District of New York, New
York, NY, *for Appellee*.

_____

R<small>EENA</small> R<small>AGGI</small>, *Circuit Judge*:

Defendant Dwayne Barrett comes before this court for the third
time to challenge a judgment of conviction entered in the United
States District Court for the Southern District of New York (Richard J.
Sullivan, *Judge*) after a jury trial at which Barrett was found guilty on
multiple counts of conspiratorial and substantive Hobbs Act robbery;
the use of firearms during such robberies; and, in one robbery, the
murder of a robbery victim.  *See* 18 U.S.C. §§ 924(c)(1)(A), 924(j), 1951
& 2; *United States v. Barrett* ("*Barrett I*"), 903 F.3d 166 (2d Cir. 2018) &
*United States v. Barrett*, 750 F. App'x 19 (2d Cir. 2018), *both vacated* 139
S. Ct. 2774 (2019); *United States v. Barrett* ("*Barrett II*"), 937 F.3d 126 (2d
Cir. 2019).  On this appeal of the amended judgment entered on May
21, 2021, which followed our remand in *Barrett II*, Barrett argues that
(1) his initial appellate counsel[1] was constitutionally ineffective in
failing to mount a sufficiency challenge to his convictions on Counts
Five, Six, and Seven for substantive Hobbs Act robbery and related
firearms and murder counts on the ground that the evidence proved
only attempted robbery; (2) in any event, substantive Hobbs Act
robbery cannot be deemed a categorical crime of violence as required
for conviction on Counts Four, Six, and Seven in light of *United States
v. Taylor*, 596 U.S. 845 (2022); (3) the total 50-year prison sentence

_____

[1] In this opinion, we hereafter refer to Barrett's initial appellate counsel as
"appellate counsel"; we refer to present appellate counsel as "present
counsel."

3

imposed on remand is procedurally unreasonable based on the district court's (a) erroneous application of U.S.S.G. § 2A1.1 to the calculation of his Sentencing Guidelines range, and (b) misapprehension that a consecutive sentence was mandated by 18 U.S.C. § 924(c)(1)(D)(ii) for § 924(j) murder (Count Seven); and (4) such a lengthy sentence is substantively unreasonable.

For the reasons stated herein, this court rejects all of Barrett's arguments as without merit except for his consecutive § 924(j) sentence challenge. The Supreme Court's recent decision in *Lora v. United States*, 599 U.S. 453 (2023) (holding that § 924(j) sentences may be imposed concurrently or consecutively), compels the conclusion that the district court was mistaken in thinking that a consecutive § 924(j) sentence was mandated.[2] Accordingly, we again vacate Barrett's sentence and remand for the limited purpose of resentencing consistent with *Lora* and this opinion. In so doing, we clarify that Barrett must be sentenced separately for his Count Six § 924(c) firearms crime and his Count Seven § 924(j) murder crime, consistent with the distinct sentencing schemes established under the two statutory provisions. In all other respects, we affirm the challenged judgment.

---

[2] This court contributed to the error by twice upholding the district court's conclusion that § 924(c)'s minimum and consecutive sentence mandates applied to Barrett's Count Seven § 924(j) sentence. *See United States v. Barrett*, 750 F. App'x at 23; *Barrett II*, 937 F.3d at 129 n.2.

## BACKGROUND

### I.   The December 12, 2011 Robbery, Firearms Use, and Murder

Between August 2011 and January 2012, Dwayne Barrett and various confederates "commit[ted] a series of frequently armed, and invariably violent, robberies."  *Barrett I*, 903 F.3d at 170.  We assume familiarity with *Barrett I*'s discussion of these robberies and here detail only those facts necessary to resolve this appeal.

One robbery, the first of two committed by Barrett and his confederates on December 12, 2011, is at the core of Barrett's claim that appellate counsel was constitutionally ineffective in failing to mount a sufficiency challenge to his conviction on Counts Five, Six, and Seven.  In recounting facts pertinent to that robbery, we necessarily view the evidence in the light most favorable to the government.  *See, e.g.*, *United States v. Avenatti*, 81 F.4th 171, 175 (2d Cir. 2023).

Trial evidence showed that on the morning of December 12, 2011, Barrett and two confederates, Jermaine Dore and Taijay Todd, used Barrett's Mercedes Benz to follow a minivan operated by livery driver Zhao Qiang Liang from a motel in the Bronx to a location in Mount Vernon, New York.  There, the van's passengers, Gamar Dafalla and Jamal Abdulla, sold a waiting customer over one hundred cartons of untaxed cigarettes for $10,000 in cash.

When the transaction concluded, the minivan and its occupants travelled to a site a few blocks away where Dafalla counted the sales proceeds before giving $200 to his associate, Abdulla.  Meanwhile, Barrett's Mercedes had followed the minivan to where it had stopped.

5

While Barrett remained in the car, Dore and Todd approached the van.  Opening the van's driver-side door, Dore pressed a gun against Zhao's head while, at the same time, Todd opened the passenger-side door and pressed a gun against Abdulla's head.  In response to the robbers' demand for the money, Abdulla threw them the $200 Dafalla had recently handed him.  Dore and Todd then pulled Zhao and Abdulla out of the van, themselves entered the vehicle, and drove off with Dafalla and the cigarette sale proceeds inside.  On foot, Abdulla chased after the van for about a hundred yards, shouting for Dafalla to throw the money to him, whereupon Dafalla threw money out of the vehicle.  Upon realizing what Dafalla had done, Dore shot him dead and then continued to drive off with Todd.

Soon after, Abdulla reported the robbery to the police.  Later that morning, officers located Zhao's minivan, its motor still running, abandoned on a quiet Bronx street approximately a mile away from the events just described.  Inside, they found Dafalla's dead body and a stack of cash under a seat.

Within hours, Barrett joined Dore and another confederate in robbing a tobacco salesman of approximately $15,000.  During that robbery, while Dore again confronted the victim with a gun, Barrett threatened the man's life with a knife, telling him not to move or "I will murder you."  Trial Tr. 685; *see Barrett I*, 903 F.3d at 171.

Thereafter, Barrett and Dore, each wearing latex gloves, wiped down Barrett's Mercedes with cleaning solution.  After Dore's arrest later that same day on unrelated charges, Barrett went to the home of Dore's girlfriend to dispose of the gun used to kill Dafalla.  Barrett

6

and another confederate, "Duffel," retrieved the gun and drove to the West Side Highway, where "Duffel" threw it into the Hudson River.

## II.    Indictment and Initial Sentencing

In the operative June 25, 2012 superseding indictment, the grand jury charged Barrett with conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951 (Count One); using a firearm in the commission of that conspiracy, *id.* §§ 924(c)(1)(A) & 2 (Count Two); two substantive Hobbs Act robberies, *id.* §§ 1951 & 2 (Counts Three and Five); and using firearms in the commission of those robberies, *id.* §§ 924(c)(1)(A) & 2 (Counts Four and Six); in one case causing death, *id.* §§ 924(j)(1) & 2 (Count Seven).    Count Five specifically charged that on December 12, 2011, "DORE and BARRETT robbed at gunpoint three victims engaged in a transaction involving the sale of cigarettes, during which robbery one of the victims was shot and killed."  Superseding Indictment ¶ 6.  Count Five's substantive Hobbs Act robbery served as the predicate crime of violence underlying Count Six's § 924(c) firearms charge and Count Seven's § 924(j) murder charge.  *Id.* ¶¶ 7–8.  Tried together, Barrett and Dore were each found guilty on all seven counts of the indictment.[3]

At Barrett's July 16, 2014 sentencing, the district court determined that the law mandated a total minimum term of 55 years' incarceration: five years for the § 924(c) firearms use charged in Count

---

[3] Co-conspirator Todd was convicted separately based on his guilty plea to conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951, and using a firearm in the commission of that conspiracy, *id.* § 924(c)(1)(A)(i).  Todd's § 924(c) conviction was vacated following *Barrett II*, 937 F.3d 126.  *See infra* at 11.

Two, a consecutive 25 years for the § 924(c) firearms use charged in Count Four, and a consecutive 25 years for the § 924(j) murder charged in Count Seven, with which the court concluded the predicate § 924(c) firearms use charged in Count Six merged.[4]  In so

---

[4] At the time of Barrett's initial sentencing, § 924(c)(1)(A) stated in pertinent part as to Barrett's Count Two crime:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm . . . shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

> (i) be sentenced to a term of imprisonment of not less than 5 years.

At the same time, § 924(c)(1)(C) stated in pertinent part as to Barrett's Count Four and Six crimes:

> In the case of a second or subsequent conviction under this subsection, the person shall—

> (i) be sentenced to a term of imprisonment of not less than 25 years[.]

This second mandatory minimum was amended in 2018 by the First Step Act.  *See infra* at 11–12.

Section 924(c)(1)(D)(ii) stated in pertinent part:

> [N]o term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

Section 924(j) stated in pertinent part:

8

ruling as to Count Seven, the district court relied on a summary decision of this court, which stated that § 924(j) "incorporate[s] § 924(c)'s penalty enhancements, specifically, 25-year minimum sentences for second or subsequent § 924(c) convictions and mandatory consecutive sentencing." *United States v. Young*, 561 F. App'x 85, 93 (2d Cir. 2014) (internal quotation marks and citation omitted); *see* Sent'g Tr. 17–18 (citing *Young*). Barrett objected, citing the Eleventh Circuit's contrary holding in *United States v. Julian*, 633 F.3d 1250, 1253 (11th Cir. 2011) (holding § 924(j) not subject to § 924(c)'s sentencing mandates). While adhering to *Young,* the district court noted that Barrett might nevertheless succeed on his preserved objection to a consecutive § 924(j) sentence because "[t]he Second Circuit may decide to reverse itself. Or maybe the Supreme Court will decide to reverse the Second Circuit. And then we'll be back here for a resentencing." Sent'g Tr. 19. After calculating Barrett's Guidelines range to recommend life imprisonment, the district court sentenced him to a prison term of 20 years on Count One; a consecutive five-year term on Count Two; 15-year terms on Counts Three and Five, concurrent to each other, but consecutive to the sentence on Count One; a consecutive 25-year term on Count Four;

---

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—

(1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and

(2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

and a consecutive 25-year term on merged Counts Six and Seven, for a total prison term of 90 years.

## III. First Appeal

On initial appeal, Barrett's counsel argued that (1) the district court erred in failing to suppress or in wrongfully admitting certain evidence; (2) his Count Seven § 924(j) sentence should not have incorporated § 924(c)'s sentencing mandates; and (3) his convictions on Counts Two, Four, Six, and Seven were invalid because neither substantive nor conspiratorial Hobbs Act robbery constitutes a categorical crime of violence under § 924(c)(3). In *pro se* filings, Barrett further challenged (4) his arrest and the search of his car and cellphone; (5) the government's compliance with its disclosure obligations; (6) various evidentiary rulings at trial; (7) the government's summation for shifting the burden of proof to defendant; and (8) the sufficiency of the evidence on Counts Two, Four, Six, and Seven, in part because of a deficient instruction as to aiding and abetting.

This court rejected Barrett's third counseled argument in a published opinion, *see Barrett I*, 903 F.3d at 169–70 (holding conspiratorial and substantive Hobbs Act robbery to be crimes of violence), and summarily rejected all remaining counseled and *pro se* arguments, *see United States v. Barrett*, 750 F. App'x at 21. The court denied Barrett's subsequent requests for panel or *en banc* rehearing.

Present counsel then joined appellate counsel in petitioning the Supreme Court for a writ of certiorari to review Barrett's challenges to those counts of conviction dependent on the meaning of "crime of violence" under § 924(c). The Supreme Court granted the petition

10

and remanded for further consideration in light of its then-recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) (holding residual definition of crime of violence in § 924(c)(3)(B) unconstitutionally vague).  *See Barrett v. United States*, 139 S. Ct. 2774 (2019).

On remand, where Barrett was again represented by both appellate and present counsel, this court vacated Barrett's Count Two § 924(c) conviction after determining, in light of *Davis*, that conspiracy to commit Hobbs Act robbery is not a crime of violence under § 924(c)(3), but we "affirm[ed] Barrett's conviction in all other respects and remand[ed] for resentencing in light of our partial vacatur." *Barrett II*, 937 F.3d at 127.  At the government's request, the court confirmed in *Barrett II* its earlier summary holding that § 924(j) incorporates § 924(c)'s penalty mandates and concurrent-sentence bar.  *Id.* at 129 n.2.

## IV.    Resentencing

At Barrett's May 20, 2021 resentencing, the district court noted that, after Barrett's initial 2014 sentencing, Congress enacted the First Step Act of 2018,[5] which, among other things, altered certain mandated prison terms set forth in 18 U.S.C. § 924(c).  As relevant here, the First Step Act "eliminat[ed] the enhanced penalty for multiple section-924(c) convictions charged in the same indictment where the defendant does not have a prior final section-924(c) conviction."  *United States v. Collymore*, 61 F.4th 295, 298 (2d Cir.

---

[5] *See* Pub. L. No. 115-391, 132 Stat. 5194 (codified as amended in various sections of Titles 18, 21, 34, and 42 of the U.S. Code).

2023).[6]  The district court held that these amendments to § 924(c) applied to Barrett's post-vacatur resentencing, such that it was no longer "required to impose a 25-year mandatory minimum on Count Seven, Six/Seven" or Count Four.  Resent'g Tr. 10.[7]  Rather, it identified the applicable mandatory minimum consecutive sentence for these counts as five years, as required by §§ 924(c)(1)(A)(i), 924(c)(1)(D)(ii), for a total mandated minimum of ten years.[8]  At the

---

[6] Section 924(c)(1)(C) now states in pertinent part as follows:

> In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall—
>
> (i) be sentenced to a term of imprisonment of not less than 25 years[.]

[7] On remand, the government challenged the application of First Step Act amendments to Barrett's sentence.  Because it does not do so on this appeal, we deem the argument abandoned, *see United States v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994), and we do not address that question on which this court has yet to rule conclusively, *see United States v. Eldridge*, 2 F.4th 27, 41 n.17 (2d Cir. 2021) (expressing "no opinion . . . on whether Section 403(a) of the First Step Act applies at a defendant's *re*sentencing following vacatur of a defendant's original erroneous sentence, where the First Step Act was enacted after the original sentencing but before resentencing," but noting circuit split (emphasis in original)), *vacated and remanded on other grounds*, 142 S. Ct. 2863 (2022).

[8] Count Four of the Superseding Indictment in fact charged Barrett with "brandish[ing]" a firearm, which carries a seven-year mandatory minimum sentence, § 924(c)(1)(A)(ii), and Count Six charged "discharg[ing]" a firearm, which carries a ten-year mandatory minimum sentence, § 924(c)(1)(A)(iii).  On the existing record, we can only assume that the district court applied the lesser five-year minimum sentence mandated by § 924(c)(1)(A)(i) to these counts (and Count Seven) because the jury had not

same time, the district court rejected Barrett's argument that the first-degree murder Sentencing Guideline, *see* U.S.S.G. § 2A1.1, should not apply, and it again calculated Barrett's recommended Guidelines range as life imprisonment.

After considering all parties' submissions and arguments, the district court sentenced Barrett to concurrent 20-year prison terms on each Hobbs Act robbery count (*i.e.*, Counts One, Three, and Five), with a consecutive minimum five-year prison term on Count Four and a consecutive above-minimum 25-year term on Count Seven (with which it again deemed Count Six to have merged), for a total incarceratory sentence of 50 years.

In explaining its decision to sentence Barrett to a total prison term 40 years lower than its original 90-year sentence, the district court noted changes not only in relevant sentencing law but also in Barrett, specifically, his positive prison record and acceptance of responsibility. *See, e.g.*, Resent'g Tr. 51 (explaining that Barrett's "letter reflects . . . mature regret about the things [he] did and the harms [he] caused"); *id.* at 52–53 ("[I]t's a big reduction from 90, and it's largely as a result of what you've done in the last seven years."). At the same time, however, the court explained as follows:

> There's just a limit . . . to how relevant [these mitigating factors] can be in a case like this . . . [where] crimes over such a long period of time involved such brutal violence, violence perpetrated or threatened against a man in front

---

been asked to make a specific finding of brandishing or discharging. *See Alleyne v. United States*, 570 U.S. 99, 117 (2013) (holding such finding necessary to trigger higher mandatory minimum).

of his children in his home, violence on the street, violence that resulted in a man getting killed.

*Id.* at 50.[9]  In these circumstances,

the harms and the crimes themselves do require, not as a matter of the sentencing guidelines, not as a matter of mandatory minimums, but just as a matter of simple justice, they do require a significant sentence.

*Id.* at 51.  The district court continued,

this was a serious crime.  That's the reason why I'm imposing a sentence of 50 years, which is . . . a long sentence, because these crimes were as brutal as any I've ever seen.  They persisted over such a long period of time after you had had prior convictions and continued even after the murder of a man during the course of a robbery.  That does require punishment . . . .  That's what drives this sentence.

*Id.* at 54.  Focusing specifically on the Count Seven murder, the district court explained that, in its view,

to impose a sentence of less than 25 years on Count Seven would be, I think, to disrespect the victim, Mr. Dafalla, and his family.

*Id.* at 52.

---

[9] In the Count Three robbery, Barrett and his confederates ordered a poulterer at knifepoint to drive to his home, where they brandished guns in forcing the poulterer's brother and his children to "lie on the floor and not to make a sound."  *Barrett I*, 903 F.3d at 170.

14

Nevertheless, the district court urged Barrett to continue working for self-improvement in prison. It observed,

> that sometimes the law changes. You've seen it. You've benefited from it, and it could change again. It's not going to get worse for you, I doubt, unless you commit more crimes even in jail, but it may get better. You may even get another look down the road. You never know.

*Id.* at 53.

Following entry of the amended 2021 judgment, appellate counsel timely filed this notice of appeal, whereupon she then withdrew, leaving only present counsel representing Barrett.

## DISCUSSION

## I.    Ineffective Assistance of Counsel

Barrett argues that appellate counsel was constitutionally ineffective in failing to argue that the trial evidence was legally insufficient to prove him guilty of the December 12, 2011 substantive Hobbs Act robbery charged in Count Five. Barrett maintains that it should have been obvious to counsel that the evidence admitted only a finding of attempted Hobbs Act robbery because, as a result of Dafalla throwing most of the "$10,000 out of the minivan and his partner, Abdulla, recover[ing] it," there was never any actual "taking or obtaining" of that money by the robbers. Appellant Br. at 27 (quoting 18 U.S.C. § 1951(b)(1)). The point is significant not only because Barrett was not charged with attempted robbery in Count Five, but also because attempted robbery is not a categorical crime of violence, *see United States v. Taylor*, 596 U.S. 845, and thus cannot serve as the violent-crime predicate required for conviction on the § 924(c)

15

firearms and § 924(j) murder crimes charged in Counts Six and Seven. Barrett further argues that for a taking or obtaining of property to constitute a completed robbery, the evidence must show that the robbers (1) intended permanently to take or obtain the property, and (2) managed to carry it to a place of safety, neither of which was demonstrated here.

At the outset, we note that Barrett did not raise this specific sufficiency argument in the district court. Instead, in moving for acquittal pursuant to Fed. R. Crim. P. 29(a), trial counsel generally argued that "the government has not met [its] burden of proof at this juncture in respect to the crimes charged in the indictment." Trial Tr. 1717. Because this court has held that a "defendant need not specify the ground of [a Rule 29] motion in order to preserve a sufficiency claim for appeal," *United States v. Gjurashaj*, 706 F.2d 395, 399 (2d Cir. 1983); *accord United States v. Hoy*, 137 F.3d 726, 729 (2d Cir. 1998), we conclude that the sufficiency challenge now urged by Barrett was adequately preserved for his appellate counsel to have raised it on direct appeal. Nevertheless, we reject as meritless Barrett's claim that appellate counsel was constitutionally ineffective in failing to raise the urged sufficiency challenge.

## A.    Standard of Review

"The Sixth Amendment guarantees the right to effective representation on direct appeal." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985)). To succeed on a claim of ineffective appellate counsel, a defendant must satisfy both prongs of the test stated in *Strickland v. Washington*, 466 U.S. 668 (1984), *i.e.*, he "must show that (1) counsel's performance was

16

objectively deficient, and (2) [defendant] was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland*); *see Lynch v. Dolce*, 789 F.3d at 311 (holding *Strickland* test applicable in appellate context).

In most cases, this court prefers for ineffective assistance claims to be raised in a collateral motion for relief under 28 U.S.C. § 2255 rather than on direct appeal, the former procedure allowing for record development that can often assist in the necessary two-step analysis. *See Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *accord United States v. Vilar*, 729 F.3d 62, 98 (2d Cir. 2013). Nevertheless, where an ineffectiveness claim rests entirely on a legal question that can be resolved on the existing trial record, we may resolve the matter on direct appeal. *See United States v. Kimber*, 777 F.3d 553, 562 (2d Cir. 2015). This is such a case.

At the first step of *Strickland* analysis, we indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, viewing the actions in light of the law and circumstances confronting counsel at the time." *Harrington v. United States*, 689 F.3d at 129 (internal quotation marks and citations omitted). To overcome this presumption, a defendant bears a "heavy" burden because "[t]he determinative question . . . is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id.* at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (observing that "[s]urmounting *Strickland*'s high bar is never an easy task" (internal quotation marks omitted))).

17

As applied to appellate counsel, this standard imposes no duty "to raise every 'colorable' claim." *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (rejecting claim that counsel ineffectively appealed multi-count conviction by briefing only three of seven potential issues discussed with defendant). Indeed, the Supreme Court has observed that a competent appellate advocate must "examine the record with a view to selecting the most promising issues for review" because "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id.* at 752–53. Thus, to demonstrate constitutional incompetence at the first step of *Strickland* analysis, Barrett must show that appellate counsel failed to raise a "significant and obvious" sufficiency challenge to his Hobbs Act robbery conviction "while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." (internal quotation marks omitted)).

Even if Barrett could make that showing, at *Strickland*'s second step, he must demonstrate that he was prejudiced by counsel's failure, *i.e.*, he must show a "reasonable probability that [the omitted challenge] would have succeeded." *Lynch v. Dolce*, 789 F.3d at 311. Where, as here, the omitted challenge pertains to the sufficiency of the evidence, this second-step burden is particularly heavy because, even though our review is *de novo*, we will not find probable success if, "crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, '*any* rational trier of fact could have

18

found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Avenatti*, 81 F.4th at 184 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). A defendant "cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." *Harrington v. United States*, 689 F.3d at 130.

Applying these deferential standards of review, we conclude that Barrett fails to carry his burden at either step of *Strickland* analysis. He was not denied effective assistance of appellate counsel.

**B.** *Strickland* **Step One**

### 1. Counsel Pursued Strong Arguments that Significantly Benefited Barrett

Barrett confronts a significant hurdle at the first step of *Strickland* analysis because appellate counsel pursued strong arguments that proved successful in securing significant benefits.

On direct appeal, Barrett's counsel argued, *inter alia*, that Hobbs Act conspiracy was not a categorical crime of violence and, thus, not a viable predicate for his Count Two § 924(c) firearms conviction. While this court initially rejected the argument, *see Barrett I*, 903 F.3d at 177, appellate counsel, with present counsel, pursued it in the Supreme Court, which was persuaded for reasons stated that same term in *United States v. Davis*, 139 S. Ct. at 2336 (holding residual definition of crime of violence in § 924(c)(3)(B) unconstitutionally vague). Thus, the Court remanded Barrett's case for further proceedings in light of *Davis*. *See Barrett v. United States*, 139 S. Ct. 2774.

19

On that remand, appellate counsel's arguments were successful in securing not only vacatur of Barrett's conviction on Count Two, but also a 40-year reduction in the term of incarceration originally imposed. *See supra* at 11–13. In granting that relief, the district court commended appellate counsel as "a wonderful lawyer [who] has made terrific arguments and really [did] a masterful job of representing Mr. Barrett." Resent'g Tr. 52. This record hardly bespeaks the pursuit of weak arguments reflective of ineffective representation.

Indeed, appellate counsel's achievement of a significant sentence reduction for Barrett is all the more notable given that it was by no means inevitable. In *United States v. Davis*, the Supreme Court specifically stated that "defendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences" because "the district court may increase the sentences for any remaining counts if such an increase is warranted." 139 S. Ct. at 2336 (internal quotation marks omitted).[10]

---

[10] The *Davis* majority made this observation to assuage the four dissenting justices' concern that the Court's decision could result in "[m]any offenders who have already committed violent crimes with firearms—and who have already been convicted under § 924(c)" being "released early from prison." *Id.* at 2354 (Kavanaugh, *J.*, with Roberts, *C.J.*, Thomas and Alito, *JJ.*, dissenting). In expressing this concern, the dissenters referenced Barrett's case by name and demonstrated obvious familiarity with its troubling facts:

The defendant and his co-conspirators committed a string of armed robberies of small businesses. During the robberies, they wore masks and gloves. They were armed with guns, knives, and baseball bats. They injured several people during

20

Further, appellate counsel pursued still other arguments potentially beneficial to Barrett. Her argument that § 924(c)'s penalty enhancement is not mandated for Barrett's Count Seven § 924(j) conviction—also initially rejected by this court, *see Barrett II,* 937 F.3d at 129 n.2—now represents controlling law, *see Lora v. United States,* 599 U.S. at 459, and, as a result, secures Barrett the further remand ordered on this appeal, *see infra* Part III.A.2.

Thus, Barrett cannot show that appellate counsel pursued clearly weak arguments on appeal.

### 2. The Urged Insufficiency Argument Is Not Strong

Barrett also cannot show that his urged insufficiency argument was obviously and significantly stronger than the arguments appellate counsel successfully pursued.

### a. *Barrett I*

Barrett attempts to make that showing by citing a heading in the Factual Background section of *Barrett I*, which reads: "Dafalla Attempted Robbery and Murder." *Barrett I,* 903 F.3d at 171. He submits that this demonstrates this court's recognition that the trial evidence as to Count Five proved only attempted, not completed, robbery. He is mistaken.

---

the course of their robberies, breaking bones, drawing blood, and knocking people out. They also shot and killed one of their victims point blank.

*Id.*

21

In *Barrett I*, this court was not presented with a sufficiency challenge to the evidence of substantive Hobbs Act robbery charged in Count Five. The quoted heading thus represents no legal conclusion on that point. It serves only as a signpost to introduce a summary of facts pertinent to crimes charged in Counts Five, Six, and Seven. In that context, the word "attempted" was used—perhaps inartfully—to preview facts showing that the robbers' initial acquisition of the entirety of the cigarette sale proceeds at gunpoint was thereafter thwarted in part when Dafalla managed to throw much of the proceeds out the van window, an action for which he paid with his life. But nowhere in *Barrett I* did this court hold that the evidence was insufficient as a matter of law to permit a reasonable jury to find that, before Dafalla so acted, Barrett and his confederates had effected a robbery of the cigarette sale proceeds or that, even after Dafalla acted, they continued the robbery of that part of the proceeds still in the vehicle. Indeed, Barrett's attempt to read the *Barrett I* heading as suggesting a holding on insufficiency of the evidence is foreclosed by this court's decretal language in *Barrett I* and *Barrett II*, which unqualifiedly affirmed his Count Five conviction for substantive robbery, as well as his Count Six and Seven firearms and murder convictions for which that robbery served as the violent-crime predicate. *See Barrett I*, 903 F.3d at 185; *Barrett II*, 937 F.3d at 130.

Thus, Barrett cannot rely on *Barrett I* to demonstrate the strength of his sufficiency challenge at *Strickland* step one.

**b.      The Taking or Obtaining of Property**

Hobbs Act robbery requires proof, *inter alia*, of an "unlawful taking or obtaining of personal property."   18 U.S.C. § 1951(b)(1). Barrett submits that appellate counsel should have argued that the evidence was insufficient to prove such a taking or obtaining of the cigarette sale proceeds alleged in Count Five because that money remained in Dafalla's possession and control, as demonstrated by his throwing it out the van window.[11]  Such an argument is not obviously strong because, on the totality of the evidence, a reasonable jury was not compelled to reach the conclusion urged by Barrett.[12]

---

[11] The government argues that the evidence proved a taking (and, therefore, robbery) of the van, as well as the money.  Because Count Five alleges, and the district court charged, a robbery only of the cigarette proceeds, *i.e.*, the money, we here consider the sufficiency of the evidence to prove a taking only of that property.

[12] Indeed, Barrett's trial counsel—whose effective representation is not challenged—appears to have thought there was no point in challenging the charged robberies' commission, disputing only the government's ability to prove Barrett's participation therein.  Thus, in summation, counsel stated, "we never disputed and to this day we don't dispute that there were robberies here."  Trial Tr. 1830.  Dore's counsel took the same tack: "We do not dispute that the people that came here are victims, that these robberies occurred."  *Id.* at 1806.  On this record, appellate counsel can hardly be said to have overlooked a *strong* sufficiency challenge on a point that trial counsel appears to have conceded.  *Cf. United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (rejecting ineffectiveness challenge to trial counsel, observing, "[o]ne strategic choice a lawyer may make is to concede an element of the charged crime.  Such a decision is sound trial strategy when the attorney does not concede his client's guilt." (internal quotation marks omitted)).

In criminal law, the word "taking" means "[t]he act of laying hold upon an article, with or without removing the same.  It implies a transfer of possession, dominion, or control."  BLACK'S LAW DICTIONARY 1701 (3d ed. 1933); *accord* BLACK'S LAW DICTIONARY 1755 (11th ed. 2019) (defining "taking" as "[t]he act of seizing an article, with or without removing it, but with an implicit transfer of possession or control"); *see also* 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW ("LAFAVE") § 19.3 (3d ed. 2017) (stating as to "larceny," "taking occurs when the offender secures dominion over the property").[13]  Here, evidence showed that Barrett's confederates held guns at two victims' heads when demanding the cigarette sale proceeds, with the result that one victim promptly turned over approximately $200 in such proceeds.  That, by itself, was sufficient to permit a jury to find the taking of property required for robbery.  *See* 18 U.S.C. § 1951(b)(1) (proscribing forcible taking of another's "personal property" without regard to amount or value); *see also State v. Thomas*, 525 S.W.2d 833, 835 (Mo. Ct. App. 1975) (holding taking $4 at gunpoint sufficient to prove "taking" of property constituting robbery even though defendant was charged with taking $23 and claimed that $19 was returned to victim); *Tarver v. State*, 602 S.E.2d 627, 629 (Ga. 2004) (holding evidence of "taking" sufficient where defendant took victim's wallet at gunpoint only to discover it contained no money).

Still further evidence showed that the robbers then forcibly ejected these two victims from the van before themselves taking

---

[13] *See infra* at 26 n.14 (recognizing robbery and larceny to have common "taking" element).

possession of that vehicle and driving off with the demanded money and Dafalla inside. Viewed in the light most favorable to the government, this evidence would have permitted a reasonable jury to find that, at the moment the armed robbers did so, they had effectively taken control of the van, all the money contained therein, and Dafalla. While Barrett might have argued that Dafalla's ability to throw money out the van window raised a reasonable doubt as to whether the robbers obtained control over this property, the jury was not compelled to reach that conclusion. Evidence that the robbers promptly shot Dafalla dead when they realized what he had done would have permitted the jury to conclude that Dafalla was very much mistaken if he thought that he retained any control over money in the van after the robbers took possession.

Nor are these conclusions as to a taking foreclosed by the fact that, after killing Dafalla, the robbers abandoned both the van and the money remaining therein. A reasonable jury could find that the robbers had earlier completed a taking of whatever money they subsequently abandoned. *See* 2 JENS DAVID OHLIN, WHARTON'S CRIMINAL LAW ("WHARTON'S CRIMINAL LAW") § 26:15 (16th ed. 2023 Update) (stating that, where other elements of crime are satisfied, "a larceny is committed even if immediately thereafter the defendant abandons the property or returns it to the owner, as long as the defendant acted, at the time of the taking and asportation, with the intent to permanently deprive").

Thus, appellate counsel cannot be said to have overlooked an obviously strong sufficiency challenge to the government's proof of a taking.

### c.     Specific Intent and Asportation

In urging otherwise, Barrett maintains that a jury could not find the taking or obtaining of property necessary for robbery in the absence of evidence showing that the robbers acted with the specific intent to keep the property permanently and successfully carried the property to a place of safety.  Appellate counsel cannot be faulted for failing to so argue because Hobbs Act robbery does not require proof of specific intent or asportation.

Barrett's urged specific intent and asportation requirements for robbery derive from common law.  *See generally* 3 LAFAVE § 20.3.[14] But common law is not dispositive here because Hobbs Act robbery is a statutorily defined, not a common law, crime.  *See* 18 U.S.C. § 1951; *see generally United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812) (holding there are no federal common law crimes, only federal statutory crimes).[15]  To be sure, where "Congress borrows terms of

---

[14] Stating that, at common law, robbery consists of

> all six elements of larceny—a (1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it—plus two additional elements: (7) that the property be taken from the person or presence of the other and (8) that the taking be accomplished by means of force or putting in fear.

*Id.*

[15] Insofar as the government appears to have accepted Barrett's equation of Hobbs Act robbery with common law robbery, *see* Sept. 11, 2023 Oral Arg. Tr. 15, this court is not bound by that concession because identifying the elements of a crime presents a legal issue, *see Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) (instructing that party's concession "is by no means

art" from the common law, a court can assume it does so "know[ing] and adopt[ing]" the common law meaning. *Morissette v. United States*, 342 U.S. 246, 263 (1952). But, as the Supreme Court has explained, that assumption applies only when "a federal criminal statute uses a common-law term of established meaning *without otherwise defining it.*" *United States v. Turley*, 352 U.S. 407, 411 (1957) (emphasis added). The Hobbs Act specifically defines "robbery":

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). This definition makes no mention of any specific intent, much less a specific intent *permanently* to take or obtain property. Nor does it reference asportation or "carrying away" of property, much less require that stolen property be carried *to a place of safety*.

In urging otherwise, Barrett suggests that specific intent and asportation are implicit in the Hobbs Act's use of the undefined words "taking" and "obtaining." We are not persuaded.

---

dispositive of a legal issue"); *Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289 (1917) ("[T]he court cannot be controlled by agreement of counsel on a subsidiary question of law.").

At common law, "taking" is an element of robbery distinct from both intent and carrying away. *See supra* at 26 n.14. This undermines Barrett's claim that "taking" in the Hobbs Act means both "taking" and "carrying away." Appellant's Reply Br. at 3 (internal quotation marks omitted). Moreover, the Supreme Court, in focusing on the text of the federal bank robbery statute, 18 U.S.C. § 2113(a), specifically rejected the assertion that "take" implies a common-law asportation requirement. *Carter v. United States*, 530 U.S. 255, 272 (2000). The Court there stated that Congress is "free to outlaw" robbery "that does not involve asportation," which "hardly would have been absurd . . . since the taking-without-asportation scenario is no imagined hypothetical." *Id.* "Indeed, a leading treatise applauds the deletion of the asportation requirement from the elements of robbery." *Id.* (citing 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.11 (1986)). *Carter*'s reasoning applies with equal force to Congress's use of the word "taking" in the Hobbs Act definition of "robbery." 18 U.S.C. § 1951(b)(1). It does not require asportation.

As for specific intent, such a requirement goes to the *mens rea* part of a crime. A requirement that property be taken or obtained goes to the *actus reus* part of the crime. Thus, even if we were to assume *arguendo* that, in the Hobbs Act, Congress employed the words "taking" and "obtaining" as they are understood at common law, that does not mean that Congress intended for those *actus reus* elements to convey a specific *mens rea* requirement.

No different conclusion is compelled here by *United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958), on which Barrett relies. In that

case, the Third Circuit held that "'[r]obbery' under the Hobbs Act[] is common law robbery" and, thus, requires proof of (1) "forcible taking and *carrying away*" and (2) "*intent*[] *to permanently keep* the property so taken." *Id.* at 357 (emphasis added). *Nedley*, of course, is not controlling authority in this circuit. But more, it is no longer controlling authority even in the Third Circuit. Last year, in *United States v. Stevens*, 70 F.4th 653 (3d Cir. 2023), that court specifically rejected *Nedley*'s reliance on the "common law to import two additional elements" into the Hobbs Act's "statutory definition of 'robbery,'" *id.* at 655. The elements rejected in *Stevens* are those Barrett unsuccessfully urges here: (1) "a specific intent to steal and to permanently deprive the owner or possessor of his property" and (2) "not merely the taking but also a carrying away of that property." *Id.* (internal quotation marks omitted).[16]

---

[16] *Nedley* is also factually distinguishable from this case in that the defendants there, striking union members, never sought to take physical possession of the truck that they were found guilty of "robbing." Instead, while the truck remained always in its operator's possession, defendants employed force to interfere with the vehicle's movement and thereby prevent it from delivering goods to the site of a general freight strike. *See United States v. Nedley*, 255 F.3d at 352–53. It was in that context that the Third Circuit held that "mere unlawful interference" with an operator's "dominion and control" of his motor vehicle, in the absence of any intent to take permanent possession of the vehicle or to carry it away, did not equate to "robbery." *Id.* at 351–52, 358. By contrast, here, Barrett and his confederates sought, and for a time obtained, complete dominion and control of Abdulla's minivan and the $10,000 in cigarette sale proceeds contained therein. The fact that Dafalla was able to throw most of the money out the window does not alter the fact that the robbers' intent here was not simply to interfere with a victim's dominion and control over his

Such Second Circuit cases as Barrett cites to support a specific intent or asportation requirement for Hobbs Act robbery are not persuasive because they involve convictions under statutes that do not define "robbery." *See, e.g.*, *United States v. Rivera*, 521 F.2d 125, 128 (2d Cir. 1975) (considering conviction for robbery of government property in violation of 18 U.S.C. § 2112); *United States v. Reid*, 517 F.2d 953, 965 (2d Cir. 1975) (same); *see also Carter v. United States*, 530 U.S. at 267 n.5 (distinguishing between statutes in which Congress "simply punished 'robbery' or 'larceny,'" as in 18 U.S.C. §§ 2112, 2114, 2115, "thereby leaving the definition of these terms to the common law," and statutes reflecting "more prevalent legislative practice of spelling out elements of these crimes").[17]

Moreover, even without defining "robbery," Congress has demonstrated its ability to include or exclude specific intent and

---

property but to assume full dominion and control themselves, which for a brief time they did.

[17] Barrett also points to *United States v. Walker*, 595 F.3d 441 (2d Cir. 2010), which quoted an Eighth Circuit concurring opinion stating that "the common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements," *id.* at 444 (quoting *United States v. W.T.T.*, 800 F.2d 780, 783 (8th Cir. 1986) (Oliver, J., concurring in part and dissenting in part)). *Walker* did so in rejecting defendant's argument that a state crime defined by common law elements is not amenable to the categorical approach for the purpose of evaluating whether it is a "crime of violence" under U.S.S.G. § 4B1.2(a). *Id.* at 444–45. Thus, *Walker's* discussion of the "generic definition of robbery," *id.* at 446, has no bearing on the statutory definition of Hobbs Act robbery. Moreover, *Walker* was concerned with the force or intimidation requirement of robbery, which is specifically included in the Hobbs Act definition of robbery, not asportation or specific intent, which are not. *See id.* at 446–47.

asportation requirements in robbery statutes where it deems that warranted. In addressing bank robbery, Congress did not require specific intent or asportation when bank property is taken "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). It is only in the absence of such force, violence, or intimidation that Congress required that a defendant "take[] *and carr[y] away, with intent to steal or purloin*, any property" belonging to a bank. *Id.* § 2113(b) (emphasis added). *See Carter v. United States*, 530 U.S. at 269 (construing § 2113(a) to require proof only of "general intent," *i.e.*, "proof of knowledge with respect to the *actus reus* of the crime").

This reinforces the conclusion we draw from the text of the Hobbs Act. Because Congress there provided a statutory definition for robbery that prohibits taking "by means of actual or threatened force, or violence, or fear of injury," 18 U.S.C. § 1951(b)(1), but is silent on any specific intent requirement, the law demands only that the proscribed conduct was knowing and willful. *See generally Elonis v. United States*, 575 U.S. 723, 736 (2015) (holding that when federal criminal statute is "silent on the required mental state, [courts] read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct" (internal quotation marks omitted)); *United States v. Francis*, 164 F.3d 120, 121 (2d Cir. 1999) (stating that "absent any express [statutory] reference to intent," courts will "generally presume that proof only of 'general' rather than of 'specific' intent is required" to support conviction). There is no question that a knowing taking or obtaining of property "by means of actual or threatened force, or violence, or fear of injury," as statutorily required for Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), "falls outside the realm of the 'otherwise innocent.'" *Carter v. United*

*States*, 530 U.S. at 270.  Thus, general intent is all that Hobbs Act robbery requires.

While this court has previously stated as much in a summary order, *see United States v. Tobias*, 33 F. App'x 547, 549 (2d Cir. 2002) (stating that Hobbs Act robbery "necessarily implies knowing and willful conduct"), some of our sister circuits have so held in precedential opinions.  *See United States v. García-Ortiz*, 904 F.3d 102, 108 (1st Cir. 2018) (holding that Hobbs Act robbery provides for "implicit mens rea element of general intent—or knowledge—as to the actus reus of the offense" (internal quotation marks omitted)); *United States v. Stevens*, 70 F.4th at 660 [3d Cir.] (holding "Hobbs Act robbery is a general-intent crime"); *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) ("We have held that the only mens rea required for a Hobbs Act robbery conviction is that the offense be committed knowingly." (internal quotation marks omitted)).  We join them today in here holding that to prove a defendant guilty of Hobbs Act robbery, it is sufficient for the government to show that, in taking or obtaining property in the manner proscribed by that statute, a defendant acted knowingly and voluntarily, *i.e.*, not mistakenly, accidentally, or merely negligently; and that he did so willfully, *i.e.*, with a general awareness of the unlawfulness of his acts.  *See* LEONARD B. SAND ET AL., MODERN FEDERAL JURY INSTRUCTIONS: CRIMINAL ¶ 3A.01 (2011) ("Scienter" instruction); *id.* ¶ 50.01, Instruction 50-3 (including knowledge requirement in elements of Hobbs Act robbery).  That is what the district court charged here, and Barrett does not challenge its Hobbs Act robbery instruction or the sufficiency of the evidence to prove such general intent.

Thus, because Hobbs Act robbery does not require proof of either specific intent or asportation, Barrett cannot show that appellate counsel overlooked an obviously strong sufficiency argument on that ground.

### C.   *Strickland* **Step Two**

Barrett's urged sufficiency challenge fails to establish ineffective assistance for a second reason:  even if Hobbs Act robbery required proof of specific intent and asportation—which it does not—the evidence here was sufficient to permit a reasonable jury to find both.  Thus, Barrett cannot show that he was prejudiced by appellate counsel's failure to argue insufficiency.

Specifically, the evidence here was sufficient to permit a reasonable jury to conclude that, at the moment Barrett's armed confederates first drove off in the van with the cigarette sale proceeds inside, their intent was to take that money permanently.  Indeed, Barrett does not suggest otherwise.  The fact that Dafalla's subsequent actions frustrated that intent does not mean that the robbers did not act with that intent upon the initial taking.  Similarly, the fact that after killing Dafalla, the robbers abandoned the van with what money was then remaining inside, did not preclude a jury finding that, upon taking, they possessed the urged specific intent.  As a leading criminal law treatise states, "larceny is committed even if immediately thereafter the defendant abandons the property or returns it to the owner, as long as the defendant acted, at the time of the taking and asportation, with the intent to permanently deprive." WHARTON'S CRIMINAL LAW § 26:15.

As for asportation, Barrett misstates that requirement to demand that property be carried away *to a place of safety*. In fact, asportation requires only "some slight movement away" of the stolen property. 3 LaFave § 19.3; *see* Wharton's Criminal Law § 26:15 ("[A]ny carrying away movement, however slight, is sufficient."); *United States v. Barlow*, 470 F.2d 1245, 1250 (D.C. Cir. 1972) (stating that asportation is satisfied by defendant removing taken property "slightest distance" from original location); *Smith v. United States*, 291 F.2d 220, 221 (9th Cir. 1961) (holding that asportation element of 18 U.S.C. § 2113(b) was satisfied by defendant moving bag of money only few inches from bank teller's window before arrest). Here, a reasonable jury could find such "slight movement" proved by evidence that Barrett's confederates, after forcibly ejecting two victims from the minivan, drove off in that van with the cigarette sale proceeds inside.[18]

---

[18] *United States v. Rivera*, 521 F.2d 125, cited by Barrett, is not to the contrary. Not only does that case involve a different robbery statute than the Hobbs Act, *see supra* at 30, but its facts are not analogous. In *Rivera*, a would-be robber was pretending to be a drug dealer when he drove a then-unsuspecting undercover agent's car (containing intended buy money) to the scene of the purported drug sale. The driver then left the vehicle, and, upon returning with a confederate, pointed a gun at the agent and threatened his life before back-up agents rescued him. *See id.* at 127. It was in those circumstances—*i.e.*, where the taking was attempted only after the car containing the money had been driven to the purported purchase site and there was no movement of the vehicle or money as a result of the intervention of other officers—that this court held that the evidence of carrying away was insufficient because "the money never left the trunk." *Id.* at 128. By contrast, here the evidence showed that the robbers demanded and took possession of their victims' money *before* they drove off in the van containing that money.

34

In urging otherwise, Barrett cites cases involving crimes allegedly committed in the course of robberies (or other crimes) in which courts rejected defense arguments that the predicate crimes had concluded before the charged crimes occurred.  *See, e.g.*, *United States v. Reid*, 517 F.2d at 965 (rejecting challenge to § 924(c) conviction for using firearm in course of § 2112 robbery, holding that although firearm used had been taken from agent, charged robbery required "both a taking and a carrying away of the property" and, at time of shooting, officer "had not given up on the prospect of arresting the defendants and retrieving his revolver" (internal quotation marks omitted)).  Barrett argues that if a robbery does not conclude until stolen property is carried away to a place of safety, then before such asportation has come to an end, a defendant is guilty only of attempted robbery.  That is incorrect.  "Robbery is first committed when the defendant takes possession of and moves . . . the victim's property, but it continues as long as he continues to carry it."  2 LaFave § 14.5(f)(1); *see People v. Cooper*, 811 P.2d 742, 747–48 (Cal. 1991) (*in bank*) (explaining that, for purposes of "establishing guilt, [robbery's] asportation requirement is initially satisfied by evidence of slight movement," but crime "continues . . . as long as the loot is being carried away to a place of temporary safety" (emphasis removed)).

Thus, a sufficiency challenge to evidence of specific intent and asportation would not have succeeded, both because Hobbs Act robbery does not require such proof and because, in any event, the evidence here was sufficient to permit a reasonable jury to find such intent and asportation.  This necessarily means that Barrett cannot

demonstrate the prejudice required at the second step of *Strickland* analysis.  *See Harrington v. United States*, 689 F.3d at 130.

Because Barrett thus fails to carry his burden at either step of *Strickland* analysis, we reject as meritless his ineffective assistance of counsel challenge to his conviction on Counts Five, Six, and Seven.

## II.    Substantive Hobbs Act Robbery Is a Crime of Violence

In *Barrett II*, this court stated that substantive Hobbs Act robbery can serve as a predicate crime of violence under 18 U.S.C. § 924(c).  937 F.3d at 128 (citing *United States v. Hill*, 890 F.3d 51, 53, 60 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019)).  In a supplemental brief on this appeal, Barrett argues that this conclusion cannot stand after *United States v. Taylor*, 596 U.S. 845, and, thus, he seeks vacatur of his conviction on Counts Four, Six, and Seven.  We are not persuaded.

In *Taylor*, the Supreme Court held that *attempted* Hobbs Act robbery does not qualify as a categorical crime of violence, *see* 596 U.S. at 851, but the Court there said nothing to suggest that the same conclusion applies to *substantive* Hobbs Act robbery.  *See also United States v. Davis*, 139 S. Ct. at 2336 (holding Hobbs Act conspiracy not a categorical crime of violence because § 924(c)(3)(B) residual clause is unconstitutionally vague, without suggesting that same conclusion applied to substantive Hobbs Act robbery under § 924(c)(3)(A)). Barrett nevertheless posits two hypotheticals in an effort to show that substantive Hobbs Act robbery, like attempted Hobbs Act robbery, can be committed without "the use, attempted use, or threatened use of physical force against the person or property of another" that defines a crime of violence under § 924(c)(3)(A).  In the first, he

36

hypothesizes a defendant convicted of Hobbs Act robbery for taking or obtaining property while "threatening nonphysical injury to intangible property"; in the second he hypothesizes a defendant convicted of Hobbs Act robbery for taking or obtaining property by "threatening harm to [him]self." Appellant's Supp. Br. at 5, 10 (capitalization altered).[19]

After Barrett filed his supplemental brief, this court published its decision in *United States v. McCoy*, 58 F.4th 72 (2d Cir. 2023). There, too, the defendants argued that *Taylor* undermined precedent recognizing substantive Hobbs Act robbery as a categorical crime of violence. *See, e.g.*, *United States v. Hill*, 890 F.3d at 56–60. *McCoy*, however, roundly rejected that argument, holding that "nothing in *Taylor*'s language or reasoning . . . undermines this [c]ourt's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." 58 F.4th at 74. The ten of our sister circuits to have considered similar post-*Taylor* challenges to the identification of substantive Hobbs Act robbery as a § 924(c)(3)(A) crime of violence have reached the same conclusion. *See Diaz-Rodriguez v. United States*, No. 22-1109, 2023 WL 5355224, at *1 (1st Cir. Aug. 14, 2023); *United States v. Stoney*, 62 F.4th 108, 113–14 (3d Cir. 2023); *United States v. Ivey*, 60 F.4th 99, 116–17 (4th Cir. 2023);

---

[19] As the government observes, these scenarios are just hypothetical. Barrett points to no case in which a person has ever been charged with, much less convicted of, Hobbs Act robbery on similar facts. The government submits—not without some force—that these scenarios would more likely be prosecuted as Hobbs Act extortion rather than Hobbs Act robbery. We do not pursue that point because we conclude, for reasons that we will now discuss, that Barrett's argument is defeated by this court's recent decision in *United States v. McCoy*, 58 F.4th 72 (2d Cir. 2023).

*United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023); *United States v. Honeysucker*, No. 21-2614, 2023 WL 142265, at *3 n.4 (6th Cir. Jan. 10, 2023); *United States v. Worthen*, 60 F.4th 1066, 1068–71 (7th Cir. 2023); *United States v. Moore*, No. 22-1899, 2022 WL 4361998, at *1 (8th Cir. Sept. 21, 2022); *United States v. Eckford*, 77 F.4th 1228, 1232–36 (9th Cir. 2023); *United States v. Baker*, 49 F.4th 1348, 1360 (10th Cir. 2022); *United States v. Wiley*, 78 F.4th 1355, 1364–65 (11th Cir. 2023).

It is, of course, "a longstanding rule that a panel of our [c]ourt is bound by the decisions of prior panels until such times as they are overruled either by an en banc panel of our [c]ourt or by the Supreme Court." *United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022) (internal quotation marks omitted). Thus, we are bound by *McCoy* to reject Barrett's argument that substantive Hobbs Act robbery is not a categorical crime of violence.[20]

In an effort to avoid this conclusion, Barrett argues that *McCoy* should not control here because the court there never considered the hypothetical Hobbs Act robberies he posits and, thus, "'is not a binding precedent on th[at] point.'" Appellant's Supp. Reply Br. at 3 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952)). He is mistaken.

---

[20] As is frequently the case when we review claims that convictions are not for crimes of violence, there is no question that the actual conduct of Barrett and his confederates in committing the robberies underlying Counts Four, Six, and Seven was violent. *See Barrett I*, 903 F.3d at 170–71 (describing force actually used in those robberies). But the categorical approach does not look to actual conduct. Its focus is on the minimum conduct required to satisfy the elements of the charged crime. *See United States v. Scott*, 990 F.3d 94, 104 (2d Cir. 2021) (*en banc*).

*L.A. Tucker Truck Lines* and other cases cited by Barrett reflect only the principle that precedent is not binding when it "cannot fairly be read as resolving, or even considering, the question presented in [the instant] case." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 12 n.1 (2015); *see Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) (noting earlier panel's "*sub silentio*" resolution of issue that "never was briefed, argued, or decided" is "not binding precedent" (internal quotation marks omitted)); *Pellegrino v. N.Y. State United Tchrs.*, 843 F. App'x 409, 411 (2d Cir. 2021) (observing *L.A. Tucker Truck Lines* expresses "only the commonplace principle that precedent is not binding when it is not on point or does not resolve the question at issue in the instant case" (internal quotation marks and citations omitted)). Barrett has not cited any authority that permits us to disregard precedent that squarely rules on an issue simply because an earlier panel may not have considered additional arguments now proffered by a party. To the contrary, we are bound by prior panel rulings, even where the panel did not consider the instant party's "specific argument," so long as there is "no way to reconcile [the prior] holding . . . with [the instant party's] proposed holding." *United States v. Tabb*, 949 F.3d 81, 87 (2d Cir. 2020).

That is the case here. Barrett urges this panel to hold that substantive Hobbs Act robbery is not a crime of violence. Such a ruling cannot coexist with *McCoy*'s holding that it is. Accordingly, because this panel cannot overrule *McCoy*, we must reject Barrett's argument that substantive Hobbs Act robbery is not a categorical crime of violence. *See United States v. Baker*, 49 F.4th at 1358 [10th Cir.] (rejecting attempt to circumvent prior panel's holding that Hobbs Act robbery is crime of violence based on new arguments not considered

by prior panel because "that holding is the law of this Circuit *regardless of what might have happened had other arguments been made to the panel that decided the issue first*" (emphasis in original) (internal quotation marks omitted)).

In sum, because Barrett's argument that substantive Hobbs Act robbery is not a crime of violence is foreclosed by *McCoy*, we do not address it further. Instead, following *McCoy*, we affirm Barrett's conviction on Counts Four, Six, and Seven because the Hobbs Act robbery predicates for those counts are categorically crimes of violence.

## III. Sentence Challenge

### A. Procedural Reasonableness

#### 1. Application of Guideline § 2A1.1

Barrett argues that his 50-year sentence is procedurally unreasonable because the district court erred in applying Sentencing Guideline § 2A1.1 (First Degree Murder) rather than § 2B3.1 (Robbery) in calculating his recommended Sentencing Guidelines range. A district court commits procedural error if it improperly calculates the Sentencing Guidelines range. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (*en banc*); *accord United States v. Clarke*, 979 F.3d 82, 99 (2d Cir. 2020). We "review[] a district court's application of the Guidelines *de novo*," although we review its "factual determinations underlying a . . . Guidelines calculation . . . for clear error." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015).

On *de novo* review, we conclude that the district court correctly applied § 2A1.1 in calculating Barrett's recommended Guidelines

range.  Guideline § 1B1.2(a) instructs a court to identify the offense guideline section "applicable to the offense of conviction" by reference to "the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction."  U.S.S.G. § 1B1.2(a) (2021).[21]  As to one of the statutes pertinent to Barrett's crimes of conviction, *i.e.*, 18 U.S.C. § 924(j)(1) (Count Seven), the Statutory Index references either § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder) as the applicable guideline.  *See id.* app. A.  Barrett does not argue that the district court should have applied § 2A1.2.  Thus, we need consider only the propriety of its application of § 2A1.1.

Application Note 1 to § 1B1.2 states that, where the Statutory Index specifies more than one offense guideline for a particular statute, "the court will determine which of the referenced guideline sections is most appropriate for the offense conduct charged in the count of which the defendant was convicted."  *Id.* § 1B1.2 cmt. n.1.  Section 2A1.1 applies "when death results from the commission of certain felonies."  *Id.* § 2A1.1 cmt. n.1.  Because Barrett's § 924(j) conviction was based on a theory of felony murder, the district court correctly applied § 2A1.1.

In urging otherwise, Barrett cites *United States v. Irving*, 554 F.3d 64 (2d Cir. 2009), to argue that § 1B1.2(a) only "ordinarily" requires a district court to apply the guideline section referenced in the Statutory

---

[21] We apply the 2021 version of the Guidelines in effect at the time of Barrett's resentencing, which is identical in all relevant respects to the 2011 version in effect at the time of his original sentencing.  *See United States v. Morris*, 350 F.3d 32, 35 n.1 (2d Cir. 2003).

Index, *id.* at 72.  Barrett's reliance on *Irving* is misplaced.  First, in that case, this court interpreted the 1998 Guidelines, which did not include the applicable Guidelines' unequivocal language instructing courts to refer to the Statutory Index.[22]  Accordingly, whatever support *Irving* provides for not strictly adhering to the Statutory Index when applying the 1998 Guidelines—and Barrett cites no case so applying *Irving*—its rationale does not extend to the later Guidelines applicable here.

Further, because the applicable Guidelines specifically instructed the district court to use the Statutory Index to identify the relevant offense guideline, Barrett's argument that his "real conduct" takes this case outside § 2A1.1's "heartland" is irrelevant to the correct calculation of his Guidelines range.  Appellant's Br. at 33, 36 (internal quotation marks omitted).  Rather, as the authority on which Barrett relies reflects, such an argument would apply, if at all, after the Guidelines calculation to urge either a departure or variance from the recommended sentencing range.  *See United States v. Teeter*, 257 F.3d 14, 29–30 (1st Cir. 2001) (considering heartland argument not as challenge to § 2A1.1 cross-reference but as challenge to sentencing court's refusal to grant downward departure); *see also United States v.*

---

[22] *Compare* U.S.S.G. § 1B1.2(a) (2021) ("Refer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline, referenced in the Statutory Index for the offense of conviction."), *and id.* § 1B1.2 cmt. n.1 ("The court is to use the Chapter Two guideline section referenced in the Statutory Index (Appendix A) for the offense of conviction."), *with* U.S.S.G. § 1B1.2 cmt n.1 (1998) ("*As a general rule*, the court is to use the guideline section from Chapter Two most applicable to the offense of conviction. The Statutory Index (Appendix A) provides a listing *to assist in this determination*." (emphasis added)).

*Thorn*, 446 F.3d 378, 391 (2d Cir. 2006) (noting "imposition of a sentence outside the applicable Guideline range . . . is appropriate where 'certain aspects of the case [are] found unusual enough for it to fall outside the heartland of cases' within that Guideline" (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996))).

In any event, Barrett's heartland argument is mistaken. He submits that § 2A1.1 generally applies to "those who knowingly and intentionally participate in an act of homicide." Appellant's Br. at 33 (quoting *United States v. Teeter*, 257 F.3d at 30). But § 2A1.1's application notes state that it applies "when death results from the commission of certain felonies," *i.e.*, to felony murders. U.S.S.G. § 2A1.1 cmt. n.1. Thus, as this court has recognized, "the first-degree murder guideline is properly applied . . . even if a defendant did not know or intend that death would result" in the course of a felony crime, and "is equally applicable to convictions for conspiracy and, on a *Pinkerton* theory, for substantive crimes." *United States v. Salameh*, 261 F.3d 271, 280 (2d Cir. 2001); *see* U.S.S.G. § 2X2.1 (stating that offense level for aiding and abetting "is the same level as that for the underlying offense").[23]

---

[23] Application Note 2(B) to § 2A1.1 states that "[i]f the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted[,] . . . based upon the defendant's state of mind (*e.g.*, recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct." The district court declined to depart downward on that ground given Barrett's participation in a "reprehensible robbery" and his own violent conduct during other robberies, including a robbery within hours of that in which Dafalla was murdered. Resent'g Tr. 24–30.

Barrett is right, of course, that the Guidelines are not mandatory. *See United States v. Booker*, 543 U.S. 220, 245 (2005). But a Guidelines calculation is a required step in identifying "a sentence sufficient, but not greater than necessary" to comply with purposes statutorily identified by Congress. 18 U.S.C. § 3553(a); *id.* § 3553(a)(4)(A) (stating that sentencing court "shall consider . . . sentencing range" set forth in Guidelines); *see United States v. Cavera*, 550 F.3d at 190. Because the district court here correctly followed the Guidelines' clear language in calculating Barrett's Guidelines range, this part of Barrett's procedural challenge is meritless.

### 2.     Mandatory Consecutive § 924(j) Sentence

Barrett argues that the district court committed procedural error when it concluded on remand, as it had at Barrett's original sentencing, that § 924(j)[24] incorporated the minimum and consecutive sentencing mandates of § 924(c)(1).[25] Barrett is correct in light of the

---

[24] *See supra* at 8–9 n.4.

[25] With respect to mandatory minimums:

- § 924(c)(1)(A)(i)-(iii) mandates a sentence of "not less than 5 years" if, during "any crime of violence or drug trafficking crime," a firearm is "use[d] or carrie[d]"; "not less than 7 years" if during such a crime a firearm is "brandished"; and "not less than 10 years" if during such a crime a firearm is "discharged."

- § 924(c)(1)(B)(i)-(ii) mandates a sentence of "not less than 10 years" if the firearm used in a § 924(c) crime is "a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon"; and "not less than 30 years" if the firearm is a "machinegun," "destructive device," or is "equipped with a firearm silencer or firearm muffler."

44

Supreme Court's decision last term in *Lora v. United States*, construing § 924(j) to reference § 924(c) "only with respect to offense elements, not penalties." 599 U.S. at 458. Thus, the Court held that § 924(c)'s minimum and consecutive sentence mandates do not apply in determining a § 924(j) sentence. *See id.* at 459 (stating that court "need not consult subsection (c)'s sentences in order to sentence a subsection (j) defendant"); *see also id.* at 455 (holding that § 924(j) sentence "can run either concurrently with or consecutively to another sentence"); *id.* at 462 (observing that § 924(j) "eschews mandatory penalties in favor of sentencing flexibility").

The government argues that Barrett waived or forfeited this argument and, in any event, any error here was harmless. We do not here identify waiver or forfeiture, and while the government's

---

- § 924(c)(1)(C)(i)-(ii) mandates a sentence of "not less than 25 years" if a § 924(c) crime is committed "after a prior conviction under this subsection has become final"; and a "life" sentence if the firearm used in such a successive crime is a "machinegun," "destructive device," or "is equipped with a firearm silencer or firearm muffler."

- § 924(c)(1)(D)(i) expressly prohibits a court from "plac[ing] on probation any person convicted of a violation of this subsection."

With respect to consecutive sentences:

- § 924(c)(1)(A) states in pertinent part that its prescribed mandatory minimum sentences "shall" be imposed "in addition to the punishment provided for [the predicate] crime of violence or drug trafficking crime" supporting the § 924(c) conviction.

- § 924(c)(1)(D)(ii) states that no sentence imposed "under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed."

45

harmlessness argument is not without force, some record ambiguity prevents us from reaching that conclusion with sufficient certainty as to avoid resentencing.

### a.  Standard of Review

Controlling precedent states that, "[w]here we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing."  *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (internal quotation marks omitted). This rule places the burden on the government to make the requisite clear showing.  *See United States v. Mason*, 692 F.3d 178, 184 (2d Cir. 2012).  If, however, the defendant forfeited a procedural challenge by failing to preserve it, it becomes his burden to demonstrate "plain error" by showing "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (internal quotation marks omitted); *see United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008).  Finally, if a party fails to preserve a challenge to procedural error "as a tactical matter," then we will identify "true waiver . . . negat[ing] even plain error review."  *United States v. Quinones*, 511 F.3d 289, 321 (2d Cir. 2007) (internal quotation marks omitted). Generally, for us to identify true waiver, a defendant must "not only [have] failed to object to what [he] now describe[s] as error," but also have "actively solicited" the error "in order to procure a perceived sentencing benefit."  *Id.*

In arguing that Barrett waived any objection to the application of § 924(c)'s mandates to a § 924(j) sentence, the government points to his brief on resentencing, which stated that his Count Seven § 924(j) crime "has the same minimums as § 924(c)." S.D.N.Y. Dkt. No. 692 at 6. We are not persuaded. While waiver may be identified where "a party attempts to reassert an argument that it previously raised and abandoned below," *United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) (internal quotation marks omitted), the record in this case is more reflective of acknowledgement that an argument had been rejected than of abandonment.

To explain, both at sentencing in the district court and on direct appeal to this court, Barrett argued that § 924(c)'s minimum and consecutive sentence mandates did not apply to his Count Seven § 924(j) crime. Both courts rejected the argument on the merits. Indeed, at the government's request, this court confirmed its initial summary rejection, *see United States v. Barrett*, 750 F. App'x at 23, in the published opinion leading to resentencing, *see Barrett II*, 937 F.3d at 129 n.2. As this record demonstrates, Barrett had thus made his opposition to a mandatory minimum or consecutive § 924(j) sentence clear and, having lost the point in this court, could not—at least not before *Lora*—have asked the district court on remand to reconsider this argument. *See United States v. Williams*, 475 F.3d 468, 475 (2d Cir. 2007) (stating that law-of-the-case doctrine generally bars defendant

from renewing on remand to the district court challenges adjudicated by appeals court).[26]

Viewed in this context, Barrett's statement that § 924(j) "has the same minimums as § 924(c)," S.D.N.Y. Dkt. No. 692 at 6, did not manifest waiver or even forfeiture of his argument that the district court erroneously applied § 924(c)'s sentencing mandates in imposing his § 924(j) sentence on Count Seven.

Accordingly, and now with the benefit of *Lora*, we review the district court's mistaken application of § 924(c)'s mandates to Barrett's § 924(j) sentence for harmless error.

> **b.    Record Ambiguity Precludes Finding the *Lora* Error Harmless**

The government argues that Barrett's sentence is not infected by *Lora* error because, even if the district court was mistaken in looking to § 924(c)'s mandates in sentencing Barrett on the Count Seven § 924(j) crime, the court "imposed the same sentence on Count Six, which still carries the same mandatory consecutive sentence." Gov't Sec. Supp. Br. at 17. We think this argues harmlessness rather than lack of error. No matter. The record does not demonstrate that the district court "imposed the same sentence on Count Six" as on Count Seven. The Amended Judgment indicates that Barrett was convicted on both Counts Six and Seven, but it shows that a term of

---

[26] Because Barrett objected to a consecutive § 924(j) sentence in the district court and in this court, this case is not akin to those in which a defendant fails to raise *any* objection to an error because that objection is foreclosed by a "uniform wall of precedent." *Greer v. United States*, 593 U.S. 503, 511–12 (2021) (holding plain-error review still applies in such cases).

imprisonment was imposed *only* on Count Seven. No prison sentence of any length is recorded on Count Six. Thus, when, in imposing sentence, the district court stated that Counts Six and Seven "kind of merged into one sentence," Resent'g Tr. 10, it appears to have effected that merger through a single incarceratory sentence imposed on Count Seven. Moreover, even if the district court had imposed a separate prison sentence on Count Six, it would not necessarily have imposed the same 25-year sentence as on Count Seven. As the district court indicated, after the First Step Act, it understood the mandatory minimum sentence for Barrett's § 924(c) crimes to be five, not 25, years. In sum, because the district court did not impose the same consecutive 25-year sentence on Count Six as it imposed on Count Seven, the government cannot urge harmlessness on that ground.

There is more force to the government's argument that, even without misunderstanding § 924(c)'s application to a § 924(j) sentence, the district court would have imposed the same consecutive 25-year prison sentence on Count Seven and the same total sentence of 50 years. This finds support in the fact that, even after the district court decided that the First Step Act reduced Barrett's § 924(c) mandatory minimum sentence to five years, *see supra* at 11–12 & n.7, the court imposed a 25-year sentence on Count Seven—five times that minimum. Moreover, its explanation for this lengthy sentence makes clear that it was not anchored to § 924(c)'s mandates but, rather, it was the shortest term of incarceration warranted adequately to address Dafalla's murder: "[T]o impose a sentence of less than 25 years on Count Seven would be, I think, to disrespect the victim, Mr. Dafalla, and his family." Resent'g Tr. 52.

Other statements demonstrate that the district court imposed that 25-year sentence on Count Seven consecutively not just to satisfy a (mis)perceived statutory mandate, but to achieve the total 50-year sentence it thought necessary to address the duration and brutality of Barrett's crimes:

> [T]his was a serious crime. That's the reason why I'm imposing a sentence of 50 years, which is . . . a long sentence, because these crimes were as brutal as any I've ever seen. They persisted over such a long period of time after you had had prior convictions and continued even after the murder of a man during the course of a robbery. That does require punishment . . . . That's what drives this sentence.

*Id.* at 54. Indeed, the court stated that this 50-year total was required "not as a matter of the sentencing guidelines, not as a matter of mandatory minimums, but just as a matter of simple justice." *Id.* at 51. Thus, while the 50-year total sentence represented a 40-year reduction in Barrett's original sentence based on changes in the law and Barrett's positive prison record, the district court explained that it was the crimes themselves—not any sentencing mandates—that precluded an even lower sentence:

> There's just a limit . . . to how relevant [these mitigating factors] can be in a case like this . . . [where] crimes over such a long period of time involved such brutal violence, violence perpetrated or threatened against a man in front of his children in his home, violence on the street, violence that resulted in a man getting killed.

*Id.* at 50.

50

Were these the district court's only statements pertinent to the challenged sentence, we might well conclude that the record clearly demonstrates that, even with the benefit of *Lora*, it would have imposed a 25-year consecutive sentence on Count Seven and a total 50-year sentence. *See United States v. Jass*, 569 F.3d at 68. But two ambiguous remarks by the district court give rise to some uncertainty about that conclusion. *See United States v. Feldman*, 647 F.3d 450, 459 (2d Cir. 2011) (stating that appellate court "cannot assume, without unambiguous indication to the contrary, that the sentence would be the same" even absent identified error).

First, at Barrett's initial sentencing, after construing § 924(j) to incorporate § 924(c)'s minimum and consecutive sentence mandates, the district court observed that if its decision on that point were to be reversed by this court or the Supreme Court, "then we'll be back here for a resentencing." Sent'g Tr. 19. Then, at resentencing, the district court urged Barrett to maintain his record of good behavior in prison because "sometimes the law changes," in which case Barrett might "even get another look [at his sentence] down the road." Resent'g Tr. 53. Because the district court's ambiguous statements admit at least the possibility that it was open to imposing a lesser sentence if it was mistaken in its application of § 924(c)'s mandates to Count Seven's § 924(j) crime—as *Lora* now tells us it was—on harmless error review, we cannot conclude that the record "indicates clearly" that the district court would have imposed the same consecutive 25-year sentence on Count Seven in any event. *United States v. Jass*, 569 F.3d at 68. Thus, we are obliged to vacate and remand for resentencing in light of *Lora*.

### c. Double Jeopardy Does Not Bar Separate Sentences on Counts Six and Seven

Anticipating such a remand, Barrett argues that double jeopardy bars the district court from resentencing him on both Counts Six and Seven because the § 924(c) firearms crime charged in Count Six is a lesser-included offense of the § 924(j) murder crime charged in Count Seven. Thus, Barrett submits that, on remand, the district court must (1) resentence him on Count Seven consistent with *Lora*, *i.e.*, without applying § 924(c)'s mandates to that § 924(j) count; and (2) vacate his conviction on Count Six.[27] Barrett is correct as to the first point but mistaken as to the second. As construed in *Lora*, § 924(c)(1) and § 924(j) crimes are separate offenses for which Congress has clearly authorized cumulative punishments. This conclusion obtains even when, as here, the defendant's § 924(c) firearms predicate count is a lesser-included offense of his § 924(j) murder count. Accordingly, on remand, the district court should sentence Barrett on each of these two counts of conviction consistent

---

[27] Barrett had earlier opposed merger of Counts Six and Seven, arguing on his initial appeal that because "§ 924(j) establishes a separate offense," it was "not subject to § 924(c)'s enhancements." *United States v. Barrett*, 750 F. App'x at 23. Meanwhile, the government's original position in this court and before the Supreme Court in *Lora* was that "'Section 924(j) amounts to the "same offense" as Section 924(c) for purposes of the Double Jeopardy Clause,'" such that "'a defendant may be punished for *either* a Section 924(c) offense or a Section 924(j) offense, *but not both*.'" *Lora v. United States*, 599 U.S. at 461 (quoting Br. for United States at 22–26) (emphasis in original). After *Lora*, the parties switched positions.

with the distinct sentencing regimens created by Congress in § 924(c) and § 924(j).[28]

In explaining that conclusion, we begin with the Double Jeopardy Clause, which guarantees that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.  This command shields a defendant not only from successive prosecution for the same offense, but also from "multiple punishments for the same offense."  *United States v. Aquart*, 92 F.4th 77, 100 (2d Cir. 2024) (internal quotation marks omitted).

As this court recently observed, whether one crime is a lesser-included offense of another is "not necessarily the determinative inquiry . . . in considering whether the same or overlapping conduct may be prosecuted or punished under two different statutes" consistent with the Double Jeopardy Clause.  *Id.* at 102.  Rather, "[a] court must first 'determine whether the legislature . . . intended that each violation be a separate offense.'"  *Id.* at 103 (quoting *Garrett v.*

---

[28] Our holding pertains only to related § 924(c)(1) and § 924(j) crimes.  In § 924(c)(5), Congress separately prescribed both a mandatory minimum sentence of "not less than 15 years" for the use, carry, or possession of armor piercing ammunition in the commission of a crime of violence or drug trafficking crime, "and" a flexible sentence up to life imprisonment or even death if the use of such ammunition caused death, depending on the type of homicide involved.  18 U.S.C. § 924(c)(5); *see* Pub. L. No. 109-92, § 6, 119 Stat. 2095, 2101 (2005) (adding § 924(c)(5) to § 924(c) as part of legislation regulating manufacture, importation, sale, and use of armor piercing ammunition).  Because § 924(c)(5) is not at issue here, we need not consider whether double jeopardy would bar a cumulative sentence were a defendant convicted under both that provision and § 924(j).  We note only that the Supreme Court has recognized the two provisions as having been "cast from . . . different mold[s]."  *Lora v. United States,* 599 U.S. at 461.

*United States*, 471 U.S. 773, 778 (1985)).  In short, the "'touchstone' of multiple punishments analysis 'is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes.'"  *Id.* (quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)).

In determining Congress's intent, the elements test identified in *Blockburger v. United States*, 284 U.S. 299 (1932), is often helpful: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not," *id.* at 304; *accord United States v. Dixon*, 509 U.S. 688, 696 (1993) (reaffirming *Blockburger* test).  Where two offenses each require proof of a distinct fact, a court can generally conclude that Congress intended to create different offenses.  *See Albernaz v. United States*, 450 U.S. 333, 339 (1981) (holding statutory provisions that "clearly satisfy the rule announced in *Blockburger* . . . proscribe separate statutory offenses" given absence of contrary legislative intent).  That is not the case here.  Although Barrett's § 924(j) crime required proof of a fact, *i.e.*, causing death, not required by his predicate § 924(c) firearms crime, his § 924(c) crime required proof of no fact not also required by his § 924(j) crime.  That Barrett's § 924(c) crime is thus a lesser-included offense of his § 924(j) crime, however, does not end our double jeopardy inquiry.  As the Supreme Court has stated, the *Blockburger* test is "not controlling when the legislative intent is clear from the face of the statute or the legislative history."  *Garrett v. United States*, 471 U.S. at 779 (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)).  Where Congress "specifically authorizes cumulative punishment under two statutes,

54

regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end." *Missouri v. Hunter*, 459 U.S. at 368–69; *accord United States v. Aquart*, 92 F.4th at 103–06 (concluding that Congress intended cumulative punishments under 21 U.S.C. § 841(b)(1)(A) (drug trafficking in specified amounts) and 21 U.S.C. § 848(e)(1)(A) (murder while engaged in § 841(b)(1)(A) crime) notwithstanding *Blockburger*).

To determine if Congress intended to authorize cumulative punishments, a court first looks to statutory text. *See Garrett v. United States*, 471 U.S. at 779–80 (starting with statutory language in determining whether Congress authorized cumulative punishments); *see generally Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642–43 (2022) (stating that "Congress expresses its intentions through statutory text," and that "Court may not replace the actual text with speculation as to Congress' intent" (internal quotation marks omitted)). In the text of § 924(c)(1), Congress authorized—indeed, mandated—that sentences imposed under that provision (1) cannot be less than prescribed minimums, *see* 18 U.S.C. § 924(c)(1)(A), and (2) must run consecutively to any other sentences imposed on a defendant, *see id.* § 924(c)(1)(D)(ii).

As to the first point, the text of § 924(c)(1) mandates minimum prison terms—ranging from five years to life—for each of seven ways that the statute can be violated. *See supra* at 44–45 n.25. The minimums vary depending on how the firearm is used, the type of firearm used, and prior § 924(c)(1) convictions, but they apply without regard to whether the proscribed use causes actual harm. Thus, on its face, § 924(c)(1) makes plain Congress's intent for *every*

defendant convicted under that statute of a proscribed firearms use to be incarcerated for no less than the stated minimum term. The statute affords judges no discretion to impose a non-incarceratory sentence or a below-minimum term.

As to the second point, the statutory text states that, "[n]otwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii). The Supreme Court has described this language as a "consecutive-sentence mandate." *Lora v. United States*, 599 U.S. at 457. A consecutive sentence is necessarily a cumulative sentence. And a legislative mandate to make a sentence consecutive to "*any* other term of imprisonment" imposed on the defendant, "[n]otwithstanding any other provision of law," 18 U.S.C. § 924(c)(1)(D)(ii) (emphasis added), strongly signals Congress's intent to authorize a cumulative § 924(c) punishment without exception.

Nevertheless, for some time, courts, including our own, accepted the government's concessions or otherwise concluded that cumulative § 924(c) and § 924(j) sentences were not authorized.[29] In so doing, some courts construed § 924(j) as an aggravated version of § 924(c) that incorporated the latter's consecutive minimum

---

[29] *See, e.g.*, *United States v. Fernandini*, 652 F. App'x 4, 6 (2d Cir. 2015); *see also United States v. Garcia-Ortiz*, 657 F.3d 25, 28 (1st Cir. 2011); *United States v. Palacios*, 982 F.3d 920, 924–25 (4th Cir. 2020); *United States v. Gonzales*, 841 F.3d 339, 357–58 (5th Cir. 2016); *United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *7 (9th Cir. June 29, 2021).

sentencing mandates and rejected arguments by defendants, including Barrett, that § 924(c) and § 924(j) were separate offenses.[30]

The Supreme Court's decision in *Lora* upsets this understanding of § 924(c) and § 924(j). Although only a § 924(j) sentence was at issue in *Lora*, the Court necessarily construed both statutory provisions in reaching the conclusion that § 924(j) incorporates only § 924(c)'s elements, not its sentencing mandates. *See Lora v. United* States, 599 U.S. at 458–59. The Court's reasoning— unavailable to this court and our sister circuits when deciding the above-cited cases—must now control any consideration of whether Congress's explicit intent for § 924(c) punishments to be consecutive to "any other term of imprisonment," 18 U.S.C. § 924(c)(1)(D)(ii),

---

[30] *See United States v. Young*, 561 F. App'x at 93–94 (rejecting challenge to consecutive § 924(j) sentence, observing that "[i]f . . . § 924(j) establishes a separate offense not bound by § 924(c)'s penalty enhancements, then the district court would not have dismissed after trial [§ 924(c) count] . . . as a lesser-included offense of [§ 924(j) count]"); *see also United States v. Barrett*, 750 F. App'x at 23 (similar); *United States v. Gonzalez*, 841 F.3d at 357 [5th Cir.] (citing *United States v. Battle*, 289 F.3d 661, 667 (10th Cir. 2002), in observing that "[m]ost courts of appeals" have interpreted § 924(j) as "additional aggravating punishment for the scheme already set out in § 924(c)" (internal quotation marks omitted)); *United States v. Garcia-Ortiz*, 657 F.3d at 31 [1st Cir.] (citing *Battle* and *United States v. Dinwiddie*, 618 F.3d 821, 837 (8th Cir. 2010), in stating that § 924(c)'s consecutive sentence requirement "arguably applies to section 924(j)"); *but see United States v. Julian*, 633 F.3d at 1253–57 [11th Cir.] (holding that § 924(j) is a "separate offense" from § 924(c) that does not incorporate latter's sentencing mandates and suggesting that Congress intended to authorize cumulative punishments under both provisions because § 924(j) "potentially increases the sentence for a crime when the criminal uses a firearm" in causing death and § 924(c) includes consecutive-sentence mandate).

extends to § 924(j) sentences, or whether § 924(j) somehow negates § 924(c) mandates—even on § 924(c) counts of conviction—when defendants are sentenced for related § 924(j) crimes. We understand *Lora*'s reasoning, combined with the statutory text, to compel the former conclusion.[31]

This is most evident in *Lora*'s recognition that Congress specifically intended for a "different approach to punishment" to apply to § 924(j) homicide crimes than to § 924(c) firearms crimes. 599 U.S. at 462. The Court reached this conclusion based on the contrasting statutory text: § 924(c) is "full of *mandatory* penalties," both as to "minimum years of imprisonment" and "consecutive sentences," while § 924(j) "eschews mandatory penalties in favor of sentencing flexibility." *Id.* (emphasis in original). Thus, if a § 924(j) homicide equates to involuntary manslaughter, a court may impose a prison sentence of anywhere from zero to eight years; if the homicide equates to voluntary manslaughter, to a sentence from zero to 15 years; and if it equates to murder, to any term of imprisonment for years up to life or even the death penalty. *See* 18 U.S.C. § 924(j) (borrowing from § 1112(b) for manslaughter punishments and from § 1111(b) for murder punishments). How a defendant uses a firearm to cause death or the type of firearm used—the focus of § 924(c)'s mandatory minimum sentences, *see supra* at 44–45 n.25—in no way

---

[31] After *Lora*, the Fourth Circuit reiterated its *Palacios* holding that cumulative punishments under § 924(c) and § 924(j) violate double jeopardy. *See United States v. Ortiz-Orellana*, 90 F.4th 689, 705–06 (4th Cir. 2024). Because that court reached its conclusion without considering congressional intent as reflected in the texts of § 924(c) and § 924(j), we do not find that decision persuasive.

informs or otherwise cabins a district court's § 924(j) sentencing discretion. Based on this stark textual difference, the Court concluded that § 924(j) "supplies its own comprehensive set of penalties that apply instead of subsection (c)'s" when a defendant is sentenced for a § 924(j) crime. *Lora v. United States*, 599 U.S. at 460. Implicit in this conclusion is the corollary that § 924(c)'s distinct text also provides "its own comprehensive set of penalties"—"mandatory penalties," *id.* at 460, 462—that apply to a defendant being sentenced for a § 924(c) crime without regard to the penalties imposed for a related § 924(j) crime. In sum, as the Supreme Court earlier recognized, § 924(c)'s text clearly expresses Congress's intent that sentences for § 924(c) firearms crimes must be no less than prescribed minimums *and* "must run consecutively to all other prison terms." *United States v. Gonzales*, 520 U.S. 1, 9–10 (1997).

Section 924(j) was not at issue in *Gonzales*. Rather, the Supreme Court there considered whether Congress intended for § 924(c)'s consecutive-sentence mandate to apply to other state as well as other federal sentences. In answering that question in the affirmative, the Court employed reasoning that also pertains here. Focusing on the text of § 924(c)'s then-operative consecutive-sentence mandate—"nor shall the term of imprisonment imposed under this subsection run concurrently with *any other term of imprisonment*," 18 U.S.C. § 924(c)(1) (emphasis added)[32]—the Court concluded that a mandate applying to

---

[32] Until 1998, § 924(c)'s consecutive-sentence mandate was located in § 924(c)(1), but it was identical in all materials respects to the current consecutive-sentence mandate in § 924(c)(1)(D)(ii). *See* Pub. L. No. 105-386, 112 Stat. 3469, 3469–70 (1998) (restructuring § 924(c) by, *inter alia*, moving consecutive-sentence mandate to § 924(c)(1)(D)(ii)).

"any other term of imprisonment" must be construed to encompass *all* other prison terms, state as well as federal, because "the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind,'" *United States v. Gonzales*, 520 U.S. at 5 (collecting authorities construing word "any"). The Court specifically declined a dissent suggestion to find otherwise because the state statute of conviction "very much resemble[d]" § 924(c) in the conduct it punished. *Id.* at 15 (Breyer, J., dissenting). The Court explained that the "straightforward language of § 924(c) . . . speaks of 'any term of imprisonment' *without limitation*." *Id.* at 9 (emphasis added). Thus, the text left "no room to speculate about congressional intent." *Id.* "When a defendant violates § 924(c), his sentencing enhancement under that statute must run consecutively to *all other prison terms*." *Id.* at 9–10 (emphasis added).

Consistent with *Gonzales*'s construction of § 924(c)'s consecutive-sentence mandate as "without limitation," *id.* at 9, this court has never suggested that this mandate is negated by a related § 924(j) sentence. Rather, before *Lora*, this court (and others cited earlier) thought Congress's intent that a § 924(c) crime be punished by a consecutive minimum sentence could be effectuated by incorporating that provision's mandates into a § 924(j) sentence. *See supra* at 56–57 & n.30. *Lora* now tells us that this was error because § 924(j)'s flexible penalty scheme is entirely distinct from § 924(c)'s mandatory penalty scheme. Thus, nothing in § 924(c)'s text can be understood to compel the imposition of a mandatory minimum or consecutive sentence on a § 924(j) count of conviction. *See Lora v. United States*, 599 U.S. at 458–59. But, so too, nothing in § 924(j)'s text can be understood to signal Congress's intent to abolish the

consecutive minimum sentences mandated for § 924(c) counts of conviction whenever a defendant is sentenced on a related § 924(j) count.  Rather, by its terms, § 924(c)'s consecutive-sentence mandate applies "without limitation" to "all other prison terms," *United States v. Gonzales*, 520 U.S. at 9–10, which includes those imposed in the court's discretion under § 924(j).

Thus, based on the texts of § 924(c) and § 924(j), as now construed by *Lora*, we conclude that Congress intended to authorize cumulative sentences for a defendant convicted on related § 924(c) and § 924(j) counts of conviction.

That conclusion finds further support in statutory structure.  As the Supreme Court observed in *Lora*, Congress specifically chose to locate § 924(j) outside § 924(c).  *See* 599 U.S. at 463 & n.6.  Indeed, the two provisions, enacted more than two decades apart, are separated by "several unrelated subsections" with "nothing join[ing] their penalties textually."  *Id.* at 461.[33]  This reinforces the conclusion that Congress intended to create different crimes, subject to different penalty schemes: § 924(c), focusing on the firearm or use made of it, punishable by mandatory minimum, consecutive penalties, and § 924(j), focusing on the death caused by use of the firearm, punishable by flexible penalties from zero up to death.

---

[33] Congress added a consecutive-sentence mandate to § 924(c) in 1971, three years after the statute was first enacted.  *See* Pub L. No. 91-644, § 13, 84 Stat. 1880, 1889–90 (1971).  Section 924(j) was enacted in 1994 as part of the Federal Death Penalty Act, Pub. L. No. 103-322, § 60013, 108 Stat. 1796, 1973 (1994) (section titled "Death Penalty for Gun Murders During Federal Crimes of Violence and Drug Trafficking Crimes").

Common sense also supports the conclusion. *See Garrett v. United States*, 471 U.S. at 779, 785 (considering statutory "language, structure, and legislative history" together with "common sense" in determining whether Congress intended to authorize cumulative punishments for overlapping offenses); *accord United States v. Aquart*, 92 F.4th at 104–06. Construing § 924(j) to negate § 924(c)'s consecutive and minimum sentence mandates for defendants convicted under both statutes, as Barrett now urges, would create the anomalous result of affording only those defendants whose § 924(c) crimes actually caused death the possibility of avoiding those mandates. *See generally Abbott v. United States*, 562 U.S. 8, 21 (2010) (cautioning against interpretations of § 924(c) that would "result in sentencing anomalies Congress surely did not intend"). A court would be permitted to impose a lower sentence on a defendant whose firearms use caused death (the purportedly greater § 924(j) offense) than it would be required to impose on a defendant whose firearms use in similar circumstances did not cause death (the purportedly lesser-included § 924(c) offense). Nothing in the text of § 924(j) suggests that Congress intended to create such an illogical carveout from § 924(c)'s consecutive minimum sentence mandate.

Here again, *Lora* is instructive. The Supreme Court there recognized not only that Congress had created distinct sentencing schemes for § 924(c) and § 924(j) crimes, but also that a sentencing court "cannot follow" both schemes as written in imposing a single sentence. *Lora v. United States*, 599 U.S. at 459. Indeed, the Court concluded that efforts to "combin[e] the two subsections" in fashioning a single sentence "would set them on a collision course." *Id.* To illustrate, it hypothesized a § 924(j) conviction where death

equating to voluntary manslaughter was caused by use of a machinegun. Under § 924(j)(2), the maximum sentence for voluntary manslaughter—regardless of the firearm used—is "not more than 15 years." *Id.* at 459–60 (quoting 18 U.S.C. § 1112(b)). But § 924(c)'s mandatory minimum for use of a machinegun—even without harm— is "not less than 30 years." *Id.* at 459 (quoting § 924(c)(1)(B)(ii)). Because it would be "impossible" to fashion a single § 924(j) sentence that was both "not less than 30 years" and "not more than 15 years," the Court concluded that Congress's intent could not have been to "require[] that unachievable result." *Id.* at 460 (internal quotation marks omitted). Thus, it construed § 924(j) to "suppl[y] its own comprehensive set of penalties that apply instead of subsection (c)'s" when a defendant is being sentenced on a § 924(j) count of conviction. *Id.*[34]

---

[34] The concern identified by the Supreme Court is not limited to its hypothetical. Indeed, it is always impossible for a court sentencing under § 924(j) to comply with the "mandatory penalties" of § 924(c), while at the same time retaining full "sentencing flexibility." *Lora v. United States*, 599 U.S. at 462–63.

Nor is the concern minimized by the suggestion that double jeopardy does not preclude separate sentences for a § 924(j) crime and a § 924(c) predicate requiring proof of an additional fact (*e.g.*, brandishing or firing a firearm, or using a specific kind of firearm). *See United States v. Munoz*, No. 12 Cr. 00031 (VM), 2023 WL 4300981, at *11 n.6 (S.D.N.Y. June 30, 2023). Even assuming, without deciding, that some § 924(c) and § 924(j) crimes could satisfy the *Blockburger* test, § 924(c) mandates that all sentences imposed under that subsection—whether for the basic § 924(c)(1)(A)(i) firearms use crime or an aggravated variation—must run consecutively to "any other term of imprisonment." 18 U.S.C. § 924(c)(1)(D)(ii). Nothing in the text of § 924(c) or § 924(j) suggests that Congress intended to abolish § 924(c)'s consecutive-

The same reasoning applies to § 924(c). That statute also "supplies its own comprehensive set of [mandatory minimum] penalties," *id.*, as well as an explicit directive for those penalties to run consecutively "with any other term of imprisonment," "[n]otwithstanding any other provision of law," 18 U.S.C. § 924(c)(1)(D)(ii). This "straightforward language . . . leaves no room to speculate about congressional intent": "When a defendant violates § 924(c), his sentencing enhancement under that statute must run consecutively to all other prison terms." *United States v. Gonzales*, 520 U.S. at 9–10. That includes a prison term imposed on a related § 924(j) count of conviction. Certainly, nowhere in *Lora*'s manslaughter-by-machinegun hypothetical did the Supreme Court suggest that imposition of the maximum 15-year sentence on a § 924(j)(2) homicide count would preclude imposition of the mandatory minimum 30-year sentence (or, indeed, any sentence[35]) on the predicate § 924(c) machinegun count. Precisely because § 924(c)'s mandates make plain Congress's intent to deter *any* use of a machinegun with a consecutive minimum sentence, regardless of harm, it would defy common sense as well as text to conclude that, in § 924(j), Congress intended to create an exception for defendants whose machinegun use actually caused death. That same conclusion obtains with respect to Congress's intent

---

sentence mandate for defendants convicted of a § 924(c)(1)(A)(i) count and a § 924(j) count, but not for defendants convicted under any other § 924(c)(1) provision.

[35] Where double jeopardy applies, even concurrent sentences cannot be imposed for the same crime. *See Rutledge v. United States*, 517 U.S. 292, 301–02 (1996).

to deter any of the other firearms crimes referenced in § 924(c)(1) with mandatory consecutive minimum sentences irrespective of harm.

Nor is a different conclusion warranted by language in § 924(c)(1) protecting against the stacking of multiple punishments for the same firearms conduct. That protection pertains only to multiple mandatory minimum sentences, not to indeterminate sentences. *See* 18 U.S.C. § 924(c)(1)(A) (stating that mandatory minimum sentence prescribed by subsection must be imposed "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law"); *see Abbott v. United States*, 562 U.S. at 13 (holding that § 924(c)(1)(A) "except" clause "applies only when another provision—whether contained within or placed outside § 924(c)—commands a longer term for conduct violating § 924(c)"). Section 924(j) mandates no minimum sentences. Thus, § 924(c)(1)(A)'s stacking provision does not apply to a defendant such as Barrett convicted on a § 924(c) count with a five-year mandatory minimum and on a § 924(j) count with no mandatory minimum. In such circumstances, the language of § 924(c)(1)(D)(ii) controls, requiring the district court to impose the minimum sentence mandated by § 924(c) consecutive to any other terms of imprisonment imposed. This consecutive-sentence mandate plainly authorizes § 924(c) sentences cumulative to all others, which includes sentences imposed under § 924(j). *Cf. Abbott v. United States*, 562 U.S. at 25 (holding that § 924(c)(1)(A) "except" clause must be construed to "give[] effect to the statutory language commanding that *all § 924(c) offenders* shall receive additional punishment for their violation of that provision" (emphasis added)).

Congress's intent in affording courts broad discretion in sentencing a defendant on a § 924(j) homicide count is thus best understood by recognizing, as Congress presumably did, that it had already explicitly mandated a minimum, consecutive punishment for the predicate § 924(c) firearms crime.  A district court can take a mandated § 924(c) sentence into account in determining an appropriate § 924(j) sentence.  *Cf. Dean v. United States*, 581 U.S. 62, 69–70 (2017) (holding that court can "consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count").  In sum, we conclude that Congress's clear intent in creating two "comprehensive set[s] of penalties" in § 924(c) and § 924(j)—ones that "cannot" both be followed in a single sentence without risking "collision," *Lora v. United States*, 499 U.S. at 459–60—was to authorize cumulative punishments for separate crimes, the sentence for each crime determined by reference to its own particular statutory scheme.

As applied to this case, this conclusion means that to correct the identified procedural error in Barrett's sentence, the district court, on remand, must resentence him on Count Seven following the sentencing regimen established by § 924(j) as construed by the Supreme Court in *Lora* and without regard to § 924(c)'s mandates.  At the same time, however, the district court must sentence Barrett on Count Six within the sentencing regimen established by § 924(c).  In so ruling, we express no view as to the particular sentences the district court should impose on these two counts or its overall sentence.  We reiterate only that the district court can consider the consecutive minimum sentence mandated by § 924(c) in determining an appropriate § 924(j) sentence.  *See Dean v. United States*, 581 U.S. at 69–70.

### B.    Substantive Unreasonableness[36]

Barrett submits that his 50-year sentence is substantively unreasonable because such a lengthy term is unnecessary to protect the public in light of his rehabilitation, ineffective in providing correctional treatment, and more severe than the sentences imposed on his confederates.  We are not persuaded.

To succeed on a substantive unreasonableness claim, a defendant bears a "heavy" burden because this court does not itself attempt to identify "a 'right' sentence," but instead "defer[s] to the district court's exercise of judgment" so long as the challenged sentence can be located "within the range of permissible decisions available to a sentencing court."  *United States v. Messina*, 806 F.3d 55, 65–66 (2d Cir. 2015) (internal quotation marks omitted).  It is particularly difficult for a defendant to make that showing when, as here, he challenges a below-Guidelines sentence.  *See id.* at 66.

Barrett cannot show that a 50-year sentence fell outside the range of permissible sentences available to the district court.  Barrett

---

[36] Where, as here, we identify procedural error in a sentence, "'we may remand to the district court for resentencing without proceeding to a substantive review of the original sentence, or, where circumstances warrant, we may review for both procedural error and substantive unreasonableness in the course of the same appeal.'"  *United States v. Young*, 811 F.3d 592, 599 (2d Cir. 2016) (quoting *United States v. Tutty*, 612 F.3d 128, 131 (2d Cir. 2010)).  Because the identified procedural error does not foreclose the district court from imposing the same sentence on remand, judicial economy supports our addressing Barrett's substantive argument now.  Indeed, Barrett had expressed a preference for us to prioritize his substantive challenge over his *Lora* argument.  *See* Appellant's Sec. Supp. Br. at 7–8.

and his confederates committed "a series of frequently armed, and invariably violent, robberies," in the course of one of which Dafalla was murdered. *Barrett I*, 903 F.3d at 170–71. While Barrett argues to this court, as he did to the district court, that he did not personally shoot Dafalla, the district court reasonably assigned him responsibility for that murder based on his active efforts to cover up the killing and his participation in the violence that attended other prior and subsequent robberies. That included a robbery committed within hours of Dafalla's murder in which Dore and Barrett were both armed and Barrett specifically threatened to kill the robbery victim. *See supra* at 6; Resent'g Tr. 27–30.

Barrett's argument that confederates received more lenient sentences warrants no different conclusion. The law does not require a district court to "consider or explain sentencing disparities among codefendants." *United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020). In any event, Barrett is not similarly situated to confederates receiving more lenient sentences who either pleaded guilty, were not convicted of murder, participated in less violence or fewer robberies, had less serious criminal histories, or some combination thereof. *See United States v. Lee*, 653 F.3d 170, 175 (2d Cir. 2011) (concluding defendant not similarly situated to co-defendant because of role in offense); *United States v. Fernandez*, 443 F.3d 19, 32 (2d Cir. 2006) (observing sentencing difference justified where defendant did not plead guilty, unlike co-defendant), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007); *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (concluding defendant not similarly situated to co-defendant who pleaded guilty to less serious crimes).

Insofar as Barrett's remaining arguments appear to question the particular weight afforded to various aggravating and mitigating factors, that matter is "firmly committed to the discretion of the sentencing judge." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted). On resentencing the district court recognized Barrett's improvement in prison and accorded that factor considerable weight in reducing his sentence. Nevertheless, the court explained that such improvement could not outweigh the seriousness of the crimes committed. *See supra* at 13–14. That decision was well within the district court's discretion.

In sum, the challenged 50-year sentence for a recidivist defendant convicted of multiple violent robberies, in one of which a victim was murdered, is "within the range of permissible decisions." *United States v. Messina*, 806 F.3d at 66 (internal quotation marks omitted). We therefore reject as meritless Barrett's argument that his sentence is substantively unreasonable.

## CONCLUSION

To summarize:

1. Barrett's appellate counsel was not constitutionally ineffective in failing to argue that the evidence was insufficient to prove the Hobbs Act robbery necessary to support his conviction on Counts Five, Six, and Seven.

2. Circuit precedent compels the conclusion that Hobbs Act robbery is a categorical crime of violence. *See United States v. McCoy*, 58 F.4th 72 (2d Cir. 2023).

69

3. The district court did not commit a procedural sentencing error in applying U.S.S.G. § 2A1.1 to calculate Barrett's recommended Sentencing Guidelines range.

4. *Lora v. United States*, 599 U.S. 453 (2023), decided after Barrett was resentenced in 2021, compels the conclusion that the district court committed procedural error in applying § 924(c)'s minimum and consecutive sentence mandates to Barrett's § 924(j) sentence on Count Seven. On remand, the district court must impose separate sentences under § 924(c) on Count Six and under § 924(j) on Count Seven consistent with *Lora* and this opinion.

5. Barrett's below-Guidelines total prison sentence of 50 years is not substantively unreasonable.

Accordingly, we **VACATE** the district court's May 21, 2021 amended judgment of conviction only as to its sentence, and we **REMAND** for resentencing consistent with the Supreme Court's decision in *Lora v. United States*, 599 U.S. 453 (2023), and this opinion. In all other respects, the May 21, 2021 amended judgment is **AFFIRMED**.